1997 SD 84

**Beverly E. ENGLEHART, Plaintiff and Appellee,**

v.

**Gary LARSON, Defendant and Appellant,**

**and**

**Clarke Starr; Ruby Starr; Perkins County, a subdivision of the State of South Dakota; and the Internal Revenue Service, an agency of the United States of America, Defendants.**

No. 19679.

Supreme Court of South Dakota.

Considered on Briefs April 30, 1997.

Decided July 9, 1997.

ed two tracts of farm land as tenants in common.[1] One tract, containing approximately 2,447 acres, is located in Perkins County, South Dakota. The other tract is approximately 280 acres located in Campbell County, South Dakota. The property is used for grazing and crop production. Neither party's residence is located on this property.

[¶ 3] On June 14, 1994, Larson obtained a $180,000 loan from Clarke and Ruby Starr. To secure the loan, Larson gave Starrs a mortgage on part of the property located in Perkins County, property which was owned by Larson and Englehart as tenants in common. Larson gave this mortgage without Englehart's knowledge or consent.

[¶ 4] On October 31, 1994, Englehart commenced an action seeking to partition the two tracts of land.[2] Larson and Englehart agreed partition was appropriate. With the parties' recommendations, the circuit court appointed three referees to recommend a partition.[3] Larson selected Marty Knudson, Englehart selected Wayne Weishaar, and Knudson and Weishaar then selected Bob Penfield as the third referee.

[¶ 5] At the time Englehart commenced the partition action, the balance on Larson's debt to Starrs remained at $180,000. In April of 1995, Starrs stipulated to release of their June 14, 1994, mortgage taken as security for Larson's loan. Starrs, Larson and Englehart agreed that in exchange for the release of the lien on the Perkins County property, Starrs would take another mortgage on an appropriate part of the property distributed to Larson by the partition.

[¶ 6] The circuit court ordered the referees to recommend a partition of the disputed property. The court's instructions to the referees provided, in pertinent part:

Max Main and Kevin S. Bailey of Bennett, Main & Bailey, Belle Fourche, for plaintiff and appellee.

James P. Hurley of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant Gary Larson.

MILLER, Chief Justice.

[¶ 1] Gary Larson appeals the circuit court's confirmation of a referees' recommendation for partition of certain real property. We affirm.

## FACTS

[¶ 2] Following the death of their parents, Gary Larson and Beverly Englehart inherit-

---

1. Rudolph Larson died in 1974. His wife, Hannah Larson, died on May 31, 1993.

2. Englehart's complaint also stated causes of action for breach of covenant and accounting and payment of certain proceeds from the Perkins County property. Larson filed a counterclaim claiming Englehart breached her duty as a trustee, had a conflict of interest as executrix of their mother's estate, intentionally interfered with Larson's ASCS/CCC application, and requested one half of the support paid by Larson for the care

and support of Hannah Larson. These claims were resolved by the circuit court. Only the circuit court's judgment confirming the referees' report is at issue in this appeal.

3. Pursuant to SDCL 21–45–15, the circuit court must appoint three referees to recommend an appropriate partition in kind unless the parties file written consent for the appointment of only one referee.

1. *Partition of the Property/Fair Market Value.* You are to divide the property so that fair market value of the land is approximately equal between Englehart and Larson. You may consider all factors normally considered in arriving at the fair market value of the property, including, but not limited to: (1) type of soils; (2) value of similar agricultural property; (3) ASCS program basis and payments; (4) slope and lay of the land; (5) presence of rocks, noxious weeds, creeks, dams, fences, wells, native pasture, and pasture broken for farm land or seeded back to grass; and (6) location of each parcel of the property.

2. *Additional Information.* You may consider any additional information you deem relevant to determine the fair market value of the property and to partition of the property. You may request additional information or materials from the attorneys or the Court. Additional plat maps are attached hereto for your convenience, and ASCS aerial maps are ready for you to pick up at the ASCS office in Bison.

\*     \*     \*     \*     \*     \*

11. *Communications.* You shall *not* communicate with any of the parties or anyone connected with the parties at any time while serving as a referee. Specifically, you shall not communicate with plaintiff Beverley E. Englehart or her husband, Dean Englehart, or defendants Gary Larson, Clarke Starr, or Ruby Starr, or any one connected with them. If any of the parties or anyone connected with them attempt to communicate with you, you shall immediately inform the Court and the attorneys. *All* communications shall be made with the parties' attorneys or the Court.

12. *Proposed Partitions.* Englehart and Larson may present to you their proposals for partitioning the property in kind. You may consider their proposals in arriving at your recommendations. Any questions or requests concerning the proposed partitions shall be directed to Englehart's and Larson's attorneys. (Emphasis original).

[¶ 7] The referees inspected all the property. In addition, they consulted pertinent county soil maps and ASCS aerial maps. All three referees inspected the Campbell County comparable sales data, including the "arms-length sales" files. Penfield and Knudson inspected the Perkins County arms-length sales files. Additionally, Penfield considered past tax assessment values of the property. Based on the collected data and the inspection of the property and relevant information, each referee calculated a fair market value for the property using his own valuation method and created an individual partition recommendation.

[¶ 8] As required by the court's instructions, the referees met to develop one partition recommendation for submission to the court.[4] After discussing each referee's partition recommendation, the referees agreed to a compromise recommendation whereby they valued the Perkins County property at $425,000 and the Campbell County property at $56,000. They recommended a partition of the land in kind, giving Englehart all the Campbell County property together with approximately 1,120 acres of the Perkins County property and giving Larson the remaining 1,327 acres in Perkins County. Englehart's share of the property was valued at $245,500 and Larson's share at $236,000. The referees also recommended that Englehart be required to pay one-half the difference in total values ($9,500) to accomplish an even partition between the parties. This recommendation was signed by all the referees and proposed to the circuit court on October 10, 1995.

[¶ 9] Pursuant to a supplemental order issued by the court, the referees met again to provide specific valuations for the twenty individual parcels of land comprising the partitioned tracts. The supplemental order also prohibited the referees from considering any proposed partitions by the parties. Prior to the court's supplemental order, no proposed partitions were made available to the refer-

---

4. The court's instructions to the referees required that "[a]t least two referees must agree and sign the report [submitted to the court.] If one refer- ee disagrees with the report, that referee may submit a report stating his reasons for such disagreement."

ees for their consideration in recommending a partition of the property.

[¶ 10] Larson was displeased with the referees' final recommendation. Consequently, he hired Bryce Nelson, a licensed real estate appraiser, to establish a second fair market value for the property. Based on Nelson's calculations and what he believed to be arbitrary values reached by the referees, Larson filed objections to the referees' recommendation.

[¶ 11] The circuit court heard five days of testimony and evidence concerning Larson's objections to the recommendation. Included in this testimony was evidence concerning how the referees arrived at their individual and compromised recommendations. The circuit court also heard evidence concerning Nelson's valuation methods and his recommendation for partition. Clarke Starr testified that the productivity and quality of the individual parcels comprising the two tracts of land vary substantially, resulting in an arbitrary recommendation by the referees who valued the property at a similar per-acre value. At the conclusion of the hearing, the circuit court confirmed the referees' recommendation. Larson appeals.

## STANDARD OF REVIEW

[¶ 12] A partition action "is a proceeding in equity and the court has the inherent jurisdiction to adjust all the equities in respect to the property." *Braaten v. Braaten,* 278 N.W.2d 448, 450 (S.D.1979) (citations omitted). We review equitable actions for abuse of discretion. *Eli v. Eli,* 1997 SD 1, ¶ 8, 557 N.W.2d 405, 408. An abuse of discretion occurs when " 'no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.' " *Dartt v. Berghorst,* 484 N.W.2d 891, 894 (S.D.1992) (quoting *Jensen v. Weyrens,* 474 N.W.2d 261, 263 (S.D.1991)).

## DECISION

[¶ 13] Actions for partition of real property are authorized by SDCL 21–45–1, which provides:

When several cotenants hold and are in possession of real property as partners, joint tenants, or tenants in common, in which one or more of them have an estate of inheritance or for life or lives or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appear that a partition cannot be made without great prejudice to the owners.

Before ordering a partition in kind, the court must determine the respective rights of the parties. SDCL 21–45–15. In so doing, the court is required to appoint referees to recommend an appropriate division based on the quality and quantity of the property. *Id.;* SDCL 21–45–17. "The referees must make a report of their proceedings, specifying therein the manner in which they executed their trust, and describing the property divided and the share allotted to each party, with a particular description of each share." SDCL 21–45–20.

[¶ 14] The circuit court "may confirm, change, modify, or set aside the report, and if necessary, appoint new referees." SDCL 21–45–22. In reviewing a referees' partition recommendation,

[t]he well-settled rule is that the action of [the referees] in partition will not be set aside on the ground of unequal allotments, except in extreme cases—as where the partition appears to have been made upon wrong principles, or where it is shown by a very clear and decided preponderance of evidence that the partition is grossly unequal. The report of [the referees] in this class of cases is regarded at least as conclusive as a verdict of a jury upon a trial at law, and will not be disturbed except upon grounds similar to those on which a verdict may be vacated and a new trial granted. Indeed, the rule is maintained by some courts that it is to be regarded with more favor than a verdict, for the reason that [the referees] are usually selected by the parties because of their superior judgment and capacity to perform this particular service, and are authorized to exercise their personal knowledge and to act upon a view of the property.

*Ivins v. Hardy*, 134 Mont. 445, 333 P.2d 471, 477 (1958) (quotation omitted). Only upon a clear mistake by the referees will their proceedings be interfered with by the court. *Id.*

[¶ 15] Larson claims the partition recommended by the referees was not a just division of the property because the fair market values assigned to the twenty parcels of land in the tracts were arbitrary. He claims the referees' values for the property failed to consider the quality of the individual parcels. He also maintains that the referees' partition of the property was based on quantity, not quality, and resulted in an overvaluation of the property distributed to him and an unfair partition of the property. He further asserts that the referees were influenced by a proposed partition drafted by Englehart.

[¶ 16] In considering Larson's objections to the referees' recommendation, the circuit court heard extensive testimony and evidence from each of the referees concerning the methods used to calculate the fair market value of the property. Referees Weishaar and Penfield testified as to how they arrived at the fair market value used as a basis for the referees' recommendation. Each indicated a different method for calculating the fair market value. Weishaar's calculations relied heavily on the quality of the property, specifically whether the parcel was tillable, while Penfield used a tax assessment and comparable sales method to reach a fair market value. Referee Knudson, however, testified that he did not feel the referees established a reliable fair market value because of the different methods used and the lack of information relied on in reaching the fair market value.[5] Knudson also opined that the referees did not spend adequate time inspecting the property or comparable sales from surrounding property or establishing accurate fair market values for the individual parcels.

[¶ 17] Clarke Starr presented testimony concerning the quality of the property and challenged the referees' failure to consider the differing qualities of the parcels in calculating the fair market value of the property.

He maintained the referees' recommendation failed to fully consider the difference between the parcels of pasture land and farm land. He testified the referees overvalued the pasture land to Larson's detriment.

[¶ 18] Nelson indicated that an accurate fair market value of the property must consider the different values of the parcels and he opined that the referees' fair market value failed to fully consider the differing values. Nelson admitted at hearing that he discussed the quality of the property with Starr prior to making his fair market value calculation.

[¶ 19] The validity and appropriateness of the referees' fair market value calculation is essentially a fact question. What the referees did or did not do in arriving at their partition recommendation is also a question of fact. We are required to resolve factual conflicts in favor of the circuit court's findings unless they are shown to be clearly erroneous. *In re Estate of Elliott*, 537 N.W.2d 660, 662 (S.D.1995). The circuit court is in the best position to assess the witnesses' credibility and the weight to be given their testimony and we give great deference to the circuit court's opportunity to observe the witnesses and testimony first hand. *Id.; Cowan v. Mervin Mewes, Inc.*, 1996 SD 40, ¶ 15, 546 N.W.2d 104, 109.

[¶ 20] After a hearing, the circuit court specifically found that the referees determined the fair market value of the property in accordance with the court's instructions. The testimony of the referees supports this finding. Knudson's own testimony revealed that he agreed the referees established a fair market value for the property; he simply disagreed with the value he initially agreed to in the written recommendation. Additionally, the fair market values assigned to the individual parcels indicated the referees did not simply apply a per-acre value to each parcel, but rather considered factors affecting each parcel in determining its value.

[¶ 21] The circuit court also found Starr and Nelson's valuations to be unreliable due to Starr's interest in any partition made to

---

5. *Despite Knudson's hesitance to place a high degree of reliability on the fair market value established by the referees, he did not indicate his disagreement with the calculations at the* time the recommendation was proposed to the court. In fact, Knudson signed the recommendation and indicated his agreement with the calculations.

Larson and Nelson's pre-calculation conversations with Starr. Neither was found to be qualified to render a reliable opinion as to fair market value. On the contrary, the written report submitted by the referees and the supplemental information provided to the court established the methods by which the referees reached their partition recommendation and provided the court with reliable and unbiased fair market values for each parcel. The totality of the testimony indicates the referees had sufficient information and a sufficient understanding of the property to recommend a fair partition in kind. The court's findings support its conclusion that the referees' recommendation was reliable and equitable.

[¶ 22] The circuit court also rejected Larson's contention that the referees were influenced by a proposed partition drafted by Englehart. The circuit court specifically found that the referees arrived at their recommendation independently, without any knowledge or indication of Englehart's proposed partition. It noted that the fact the referees' recommendation was identical to a proposed partition drafted by Englehart was "an unfortunate coincidence because it gives rise to an unfounded claim that the referees were not independent." Larson has not shown this finding to be clearly erroneous.

[¶ 23] The circuit court was not bound to confirm the partition recommended by the referees; the recommendation constituted only a proposal for the court's consideration. *See* SDCL 21–45–22. If the court entertained any doubts about the referees' compliance with the court's directive or the methods used to arrive at the fair market value of the parcels, it was free to reject the recommendation or, if necessary, appoint new referees to assist in partitioning the property. *Id.* In this case, the court concluded the referees' recommendation equally divided the property with respect to the quality and quantity of the property with a minimum amount of owelty. *See Johnson v. Hendrickson*, 71 S.D. 392, 397, 24 N.W.2d 914, 916 (1946). In view of the law and circumstances of this case, we cannot say the circuit court abused its discretion by confirming the referees' recommendation.

[¶ 24] Affirmed.

[¶ 25] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.