2003 SD 25

**Douglas HOFELDT, Plaintiff and Appellant,**

v.

**Roy MEHLING, Defendant and Appellee.**

**No. 22380.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Decided March 5, 2003.

thority of *Wagner v. Wagner,* 83 S.D. 565, 163 N.W.2d 339 (1968). In turn, *Wagner* relied on *Hayes.*

Timothy R. Whalen, Lake Andes, South Dakota, Attorney for plaintiff and appellant.

Kent R. Cutler, Kimberly R. Wassink of Cutler & Donahoe, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In a land sale, after the buyer made the required down payment, the seller failed, in violation of the contract, to deliver clear title for nearly five years. During this time, the buyer was permitted to farm the land and obtain subsidy payments for it. He paid no rent and kept all the subsidies. When the seller finally delivered clear title and the sale closed, the seller sued the buyer to obtain rent and subsidies, claiming that the buyer had been unjustly enriched. The circuit court ruled that the buyer had not been unjustly enriched because he only received what he would have been entitled to had the seller delivered title promptly in accord with the contract. Because we find no abuse of discretion, we affirm.

**Background**

[¶ 2.] In 1972, Roy Mehling began leasing agricultural property in Hand County from Douglas Hofeldt's aunt. Under their arrangement, Mehling retained two-thirds of the proceeds from his crops and paid the remaining one-third as rent. Each year Mehling paid the rent following the harvest. After the aunt passed away, Hofeldt inherited the property. He continued the lease arrangement. In March 1995, the parties canceled their lease and entered a contract for deed.

[¶ 3.] Under the terms of the contract, the purchase price for the land was $91,200, with $3,000 as a down payment, and the remainder was due within thirty days or upon Hofeldt's delivery of a warranty deed. In addition, the contract provided for no interest and the buyer was to have possession of the property, along with any rent, issues, and profits from the date of final payment. The seller was required to promptly cure any title defects and provide title to the property clear of all encumbrances. Mehling paid the down payment and secured financing for the remaining amount.

[¶ 4.] Shortly thereafter, the abstract revealed that title to the property was encumbered by an IRS lien. Mehling immediately notified Hofeldt of the lien and Hofeldt assured Mehling that he would promptly resolve the matter. After a month had passed, Mehling offered to modify the contract to provide for install-

ment payments rather than a lump-sum payment. Hofeldt declined. He wanted to resolve the matter so that the sale could be closed.

[¶ 5.] Mehling soon discovered that, without title to the land, he was unable to enroll the property in federal farm programs. He sought and obtained written authorization from Hofeldt that allowed him to enroll the property in the Farm Service Agency (FSA) program. Thus, with Hofeldt's knowledge and assistance, Mehling continued to possess and farm the land and retain the profits from the property.

[¶ 6.] Over the years, from 1995 to 1999, Hofeldt and Mehling had several phone conversations in which they discussed Hofeldt's progress in clearing the title. During their discussions, both continued to express their desire to close the deal. Mehling's lender was not pleased about holding the loan open for him. Mehling claims to have lost opportunities to purchase other properties while this matter was pending. Hofeldt regularly reassured Mehling that he would promptly resolve the situation and see that the lien was removed. At no time during these discussions, however, did Hofeldt ever mention the payment of rent. Hofeldt and Mehling did discuss real estate taxes. Although the contract provided that Mehling was to pay the property taxes, Hofeldt agreed to pay them until they were able to close. Mehling later tendered reimbursement for those taxes.

[¶ 7.] Hofeldt said he had two attorneys and one accountant working on the Internal Revenue Service lien, but progress was slow.* Unknown to Hofeldt, the lien was removed in January 1997. Notice

that the lien had been released was mailed to Hofeldt and his Nebraska attorney, however, Hofeldt had moved to another address and his legal counsel failed to advise him on this matter. Finally in October 1999, Hofeldt and his South Dakota lawyer discovered that the lien had been removed. Now that Hofeldt was able to provide Mehling with a warranty deed, they made arrangements to close on the contract for deed.

[¶ 8.] After the transaction closed, Hofeldt sued Mehling for unpaid rent and reimbursement of subsidies for the years 1995 through 1999. Mehling asserted several affirmative defenses to these claims, including waiver, estoppel, laches, and possession. The circuit court granted judgment for Mehling. Hofeldt appeals on the following issues: (1) "Whether the trial court erred in holding in favor of Mehling in light of the express terms of the contract for deed." (2) "Whether Hofeldt was entitled to recover from Mehling rents and other damages on the theory of unjust enrichment."

## Analysis and Decision

[¶ 9.] A trial court's findings of fact will not be set aside unless they are clearly erroneous. SDCL 15–6–52(a). We will declare a finding of fact clearly erroneous only if we are definitely and firmly convinced that a mistake has been made. *First Nat'l Bank in Brookings v. Kuechenmeister,* 2002 SD 9, ¶ 12, 639 N.W.2d 184, 187 (citing *Lewis v. Moorhead,* 522 N.W.2d 1, 3 (S.D.1994)). We review the trial court's conclusions of law de novo. *Carstensen Contracting, Inc. v. Mid–Dakota Rural Water System, Inc.,* 2002 SD 136, ¶ 8, 653 N.W.2d 875, 877 n. 2. Unjust enrichment is an equitable concept. Our

---

* In 1989, Hofeldt suffered a head injury. As a consequence, Hofeldt claims his personal affairs had not been attended to and that he had not filed his personal income tax returns for four or five years thereafter. An accountant by trade, Hofeldt apparently had a dislike for the Internal Revenue Service. He claims that the IRS dragged its feet on removing the lien.

standard of review for cases in equity is abuse of discretion. *Kuechenmeister*, 2002 SD 9 at ¶ 12, 639 N.W.2d at 187 (citing *Mattson v. Rachetto*, 1999 SD 51, ¶ 9, 591 N.W.2d 814, 817). An abuse of discretion occurs only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. *Mattson*, 1999 SD 51 at ¶ 9, 591 N.W.2d at 817 (citations omitted).

### 1. Parol Evidence Rule

[¶ 10.] Hofeldt contends that the trial court violated the parol evidence rule when it considered the parties' discussions and conduct following the execution of their unambiguous contract for deed. Although we agree with Hofeldt that the contract for deed is unambiguous, the parol evidence rule is inapplicable here.

[¶ 11.] The parol evidence rule bars extrinsic evidence of prior negotiations offered to contradict or supplement a written contract. E. Allan Farnsworth, Farnsworth on Contracts § 7.2, at 209–10 (2d ed 1998). It is a rule of substantive law, not of evidence. *Auto–Owners Ins. Co. v. Hansen Housing, Inc.*, 2000 SD 13, ¶ 14, 604 N.W.2d 504, 510 (citations omitted). Codified in SDCL 53–8–5, the rule provides that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which *preceded* or *accompanied* the execution of the instrument." (Emphasis added.) By its express statutory language, the rule does not apply to conduct and statements taking place *after* a contract has been executed. Thus, evidence of negotiations occurring after a written agreement will not be excluded by the parol evidence rule. *See* Farnsworth, *supra*, § 7.3, § 7.6, at 228 (2d ed 1998). Indeed, contractual rights and remedies may be modified or waived by subsequent con-duct. *Moe v. John Deere Co.*, 516 N.W.2d 332, 335 (S.D.1994). Therefore, the trial court did not violate the parol evidence rule when it considered the events occurring after the contract for deed was executed.

[¶ 12.] The express terms of the contract for deed did not require Mehling to pay rent to Hofeldt while the sale was pending. Although Hofeldt argues that the contract term providing that "[t]he Buyer [Mehling] shall have possession of said property and the rents, issue and profits thereof from the date of the final payment on this contract," obligates Mehling for the rent until the final payment, a plain reading of the contract simply does not require Mehling to pay Hofeldt rent. In addition, Mehling received a cancellation of their 1994–1995 lease agreement before executing the contract for deed. At no time during the almost five-year pendency of the contract did Hofeldt ever demand rent from Mehling. When Mehling contacted Hofeldt in the spring of 1995 to offer to convert the contract into an installment arrangement, Hofeldt never mentioned the issue of rent. Before the execution of the contract for deed, Mehling had always paid his rent immediately following the harvest, yet Hofeldt never inquired about the rent after each year's harvest. Hofeldt knew that Mehling was occupying and farming the property.

[¶ 13.] Hofeldt seeks a portion of the subsidies Mehling received during the years before the sale closed. He assisted Mehling in getting the FSA payments by completing an authorization form allowing him to do so. Hofeldt never suggested that he should share in a portion of these payments. Nor was there any mention of sharing payments in the authorization agreement Hofeldt signed. Hofeldt never told Mehling that he expected a share of the FSA payments at any time during

their several conversations over the years. Under these circumstances, an obligation to pay rent and to reimburse FSA payments cannot reasonably be implied. Thus, we see no error in the trial court's ruling that Mehling was not contractually obligated to pay rent or reimburse subsidies.

## 2. Unjust Enrichment

[¶ 14.] Hofeldt contends that Mehling was unjustly enriched in receiving the subsidies and in failing to pay rent. Because unjust enrichment is an equitable remedy, a court has discretion to grant or deny it. *Adrian v. McKinnie*, 2002 SD 10, ¶ 9, 639 N.W.2d 529, 533 (citing *Englehart v. Larson*, 1997 SD 84, ¶ 12, 566 N.W.2d 152, 155); *Matter of Estate of Donahue*, 464 N.W.2d 393, 394 (S.D.1990). When a court exercises its discretion after weighing the equities of a case, we will not interfere on appeal absent a showing of an abuse of discretion. *Rehfeld v. Flemmer*, 269 N.W.2d 804, 808 (S.D.1978); *see also Red River State Bank v. Reierson*, 533 N.W.2d 683, 691 (N.D.1995) (citation omitted) (courts have discretion to grant equitable remedy of restitution to prevent unjust enrichment).

[¶ 15.] The Restatement of Restitution declares that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937). The comment to this section explains that "[a] person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be *unjust*." Restatement of Restitution § 1 cmt. a (1937) (emphasis added). Unjust enrichment occurs "when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying." *Parker v. Western Dakota Insurors,*

*Inc.*, 2000 SD 14, ¶ 17, 605 N.W.2d 181, 187 (citing *Juttelstad v. Juttelstad,* 1998 SD 121, ¶ 19, 587 N.W.2d 447, 451 (other citations omitted)).

[¶ 16.] When unjust enrichment is found, the law implies a contract obligating the beneficiary to compensate the benefactor for the value of the benefit conferred. *Mack v. Mack*, 2000 SD 92, ¶ 27, 613 N.W.2d 64, 69. For Hofeldt to prevail on his claim of unjust enrichment, he must show: (1) Mehling received a benefit; (2) Mehling was aware he was receiving a benefit, and (3) that it is inequitable to allow Mehling to retain this benefit without paying for it. *Action Mechanical, Inc. v. Deadwood Historic Preservation Comm'n*, 2002 SD 121, ¶ 21, 652 N.W.2d 742, 750 (citing *Juttelstad*, 1998 SD 121 at ¶ 19, 587 N.W.2d at 451); *Bollinger v. Eldredge*, 524 N.W.2d 118, 122–23 (S.D.1994).

[¶ 17.] While the trial court found that Mehling received a benefit and was cognizant of that benefit, it concluded that Hofeldt failed to prove the third element, that it was inequitable to allow Mehling to retain the benefit without paying for it. Regarding the first element, Mehling obtained a benefit by not having to pay Hofeldt rent or repay a part of the subsidies he received. Mehling does not dispute that he received a benefit, although this arrangement also purportedly impaired his ability to purchase other land. With respect to the second element, certainly Mehling was aware of the benefit.

[¶ 18.] On the third element, proof of unfairness in retaining the benefit without payment, the relevant inquiry is whether the circumstances are such that equitably the beneficiary should restore to the benefactor the benefit or its value. *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 607

(8thCir.1999) (citing *Frigillana v. Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979)). In weighing the equities of the matter, the trial court explained, "Mehling only received what he would have received had Hofeldt acted diligently in the beginning. The only arguable unjust enrichment is the benefit of having Hofeldt pay the taxes over the years. In this instance, Mehling has tendered those taxes."

[¶ 19.] To grant relief in equity to Hofeldt, considering his own failure to adhere to the express terms of the contract to deliver clear title, seems neither obviously justified nor necessarily fair. The parties had the opportunity to discuss this question over the years, and now it would not be equitable for a court to inject its nose in their arrangement to insert a remedy the parties never contemplated. In view of the law and the circumstances of this case, we conclude that the trial court, in weighing the equities, did not abuse its discretion in ruling that Hofeldt was not entitled to restitution for unjust enrichment.

[¶ 20.] Lastly, Hofeldt argues that the circuit court erred by implicitly accepting Mehling's affirmative defenses. As we have affirmed the trial court on the previous issues, it is unnecessary to address this question.

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, concur.

[¶ 23.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 24.] I would affirm this case but modify it to the extent of the unjust enrichment. Mehling got the rents, profits and ASC payments without paying anything except the real estate taxes. Throughout all five years, Mehling had all the benefits from the land, but never parted with the purchase price for the land.

In other words, he had the *use* of his purchase money all five years and was unjustly enriched to that extent at the expense of the seller Hofeldt.

[¶ 25.] Having the *use* of the purchase price should be treated in the same manner as the real estate taxes, which Mehling eventually tendered. The trial court was wrong to say Mehling did not profit from the delay. He did, it is called unjust enrichment.

[¶ 26.] The majority opinion sets forth the correct law in ¶ 15, but fails to follow it:

The Restatement of Restitution declares that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937). The comment to this section explains that "[a] person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be *unjust*." Restatement of Restitution § 1 cmt. a (1937) (emphasis added). Unjust enrichment occurs "when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying."

(citations omitted).

[¶ 27.] Therefore, all three prongs of unjust enrichment as set forth in ¶ 16 are present:

1. Mehling received a benefit;
2. Mehling was aware he was receiving a benefit;
3. It is inequitable to allow Mehling to retain this benefit without fully paying for it.

[¶ 28.] Here, Mehling (1) received a benefit; (2) Mehling was aware he was receiv-

ing a benefit, and (3) it is inequitable to allow Mehling to retain this benefit without fully paying for it. Determining the value of the use of the purchase price money is a relatively easy simple interest calculation for the time period of five years.