#29719-aff in pt & rev in pt-PJD
**2022 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RONITA MACH and
WAGS N' WHISKERS WEST, LLC,                  Plaintiffs and Appellants,

   v.

TONI CONNORS,                                Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN R. PEKAS
Judge

* * * *

PATRICK J. GLOVER of
Meierhenry Sargent, LLP
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                                             and appellants.


JEFFREY L. BRATKIEWICZ of
Bangs, McCullen, Butler, Foye
   & Simmons, LLP
Sioux Falls, South Dakota

SARAH E. BARON HOUY of
Bangs, McCullen, Butler, Foye
   & Simmons, LLP
Rapid City, South Dakota                     Attorneys for defendant
                                             and appellee.

* * * *

CONSIDERED ON BRIEFS
MARCH 21, 2022
OPINION FILED **08/10/22**

#29719

DEVANEY, Justice

[¶1.]     A limited liability company and one of its members, Ronita Mach, brought suit against Toni Connors, who is also a member of the company. The complaint alleges claims for breach of fiduciary duty, breach of the duty of loyalty, breach of the duty of care, conversion, and unjust enrichment related to conduct allegedly occurring in connection with the ownership and operation of a pet grooming and bathing business. The circuit court dismissed the complaint for failure to state a claim upon which relief can be granted. The plaintiffs appeal. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

[¶2.]     Ronita Mach started a business in Sioux Falls in 1999 providing pet grooming and bathing services, and in 2012, the business, Wags N' Whiskers, LLC (Wags), was registered as a South Dakota limited liability company. Her sister, Toni Connors, similarly operated a pet grooming and bathing business in Watertown named Dirty Dog Spa.

[¶3.]     Connors and her husband moved to Sioux Falls in 2016, and according to Mach, Connors expressed an interest in going into business with her. On September 12, 2016, Connors and Mach started Wags N' Whiskers West, LLC (Wags West). Mach's complaint asserts that Wags West "was an expansion of [Wags] and provided the way for [Mach and Connors] to go into business together." Wags West leased commercial property on South Louise Avenue in Sioux Falls and operated out of that leased location until the end of 2017.

[¶4.]　　　　In her briefs to the circuit court and to this Court, Mach represents that she and Connors "experienced issues between themselves throughout the venture and by the end of 2017, the venture ended." Mach further alleges in the complaint that Connors took over the lease for the South Louise Avenue property at the start of 2018 and began operating Dirty Dog Spa out of the Wags West location. On January 11, 2018, Dirty Dog Spa, LLC registered as a South Dakota limited liability company, and on February 7, 2018, Connors dissociated from Wags West. Approximately one year later, on January 16, 2019, Wags West was administratively dissolved as a South Dakota limited liability company.

[¶5.]　　　　On February 28, 2020, Mach and Wags West brought suit against Connors. In the complaint, they allege that "[b]ased on information and belief," Connors "used assets of [Wags West] to pay for personal expenses while she was a member of the company." They also allege in the complaint that "[b]ased on information and belief," Connors "used customer information of [Wags] and/or [Wags West] for her new entity, Dirty Dog Spa, LLC." Mach and Wags West assert claims for breach of duty of loyalty, breach of duty of care, conversion, and unjust enrichment.[1]

---

1.　　Mach and Wags West also separately asserted, in count one, a general claim for breach of fiduciary duty. However, before the circuit court and in their brief on appeal to this Court, they acknowledge that pursuant to SDCL 47-34A-409(a), the only fiduciary duties a member owes to a member-managed company and its other members are the duties of loyalty and care imposed under subsections (b) and (c). Besides these two duties, Mach and Wags West have not alleged in their complaint that Connors owed them any other fiduciary duties.

[¶6.]     Connors filed a motion to dismiss the complaint pursuant to SDCL 15-6-12(b)(5), alleging that it fails to state a claim upon which relief can be granted. Five days before the hearing scheduled on Connors's motion, Mach and Wags West filed a motion for leave to file an amended complaint which added Wags as a plaintiff and Dirty Dog Spa, LLC as a defendant. The proposed amended complaint also consolidated counts 1 to 3 into one count and included more detailed factual allegations.

[¶7.]     At the beginning of the hearing, the circuit court noted that the hearing pertained to both the motion to dismiss and the motion for leave to file an amended complaint. The court first took arguments on the motion to dismiss and issued an oral ruling granting the motion to dismiss. The court did not rule on Mach and Wags West's motion to amend their complaint, and they did not request a ruling on this motion at the hearing or any time thereafter. The circuit court issued an order dismissing the complaint in its entirety without prejudice.

[¶8.]     Mach and Wags West appeal, asserting the circuit court erred in granting Connors's motion to dismiss.

## Standard of Review

[¶9.]     "A motion to dismiss for failure to state a claim pursuant to SDCL 15-6-12(b)(5) tests the legal sufficiency of the pleading." *Wells Fargo Bank v. Fonder*, 2015 S.D. 66, ¶ 6, 868 N.W.2d 409, 412. The legal sufficiency of a pleading "is a question of law[.]" *Nooney v. StubHub, Inc.*, 2015 S.D. 102, ¶ 9, 873 N.W.2d 497, 499. Therefore, we review de novo whether Mach and Wags West's complaint fails

to state a claim upon which relief could be granted.  *See id.*; *Sisney v. Best Inc. (Sisney I)*, 2008 S.D. 70, ¶ 8, 754 N.W.2d 804, 809.

**Analysis and Decision**

[¶10.]       Mach and Wags West focus their opening brief on the case the circuit court relied on in its oral ruling—*Phillips v. TDI Lakota Holdings LLC*, No. 10-CV-782, 2011 WL 13225282 (E.D. Pa. 2011).  In *Phillips*, the federal district court dismissed the plaintiff's complaint because the defendant's limited liability company did not have the capacity to be sued after being dissolved, having its business wound up, and its legal existence terminated.  *Id.* at **2, 5.  The circuit court reasoned from *Phillips* that Mach and Wags West's suit could not be maintained because Wags West had been dissolved.  But being dissolved does not mean Wags West, as a legal entity, has been terminated.  Under SDCL 47-34A-802, "a limited liability company continues after dissolution only for the purpose of winding up its business."  In fact, the court in *Phillips* recognized that a company may prosecute and defend actions while being dissolved but not yet terminated.  *Id.* at *5.  In her appellate brief, Connors has agreed with Mach and Wags West's contention that the court's reliance on *Phillips* to dismiss the complaint was improper.

[¶11.]       However, "[e]ven if the circuit court provided the wrong authority at the [ ] hearing," the court's ruling "'may still be upheld if it reached the right result for the wrong reason.'"  *Pfuhl v. Pfuhl*, 2014 S.D. 25, ¶ 7, 846 N.W.2d 778, 780 (quoting *Sommervold v. Grevlos*, 518 N.W.2d 733, 740 (S.D. 1994)).  Connors advances several arguments to support that dismissal of the complaint in its

entirety was proper regardless of the circuit court's erroneous reliance on *Phillips*.

Connors asserted these same arguments before the circuit court and both parties

briefed these arguments on appeal. We therefore address each argument to

determine whether the dismissal was proper.

### A. Whether Mach can bring a direct action against Connors.

[¶12.]     Connors contends that Mach cannot bring a direct action against her

because Mach's claims relate to injuries purportedly sustained by Wags West, not

Mach. Under SDCL 47-34A-1101:

> (a) Subject to subsection (b), a member may maintain a direct
> action against another member, a manager, or the limited
> liability company to enforce the member's rights and otherwise
> protect the member's interests, including rights and interests
> under the operating agreement or this chapter or arising
> independently of the membership relationship.
>
> (b) A member maintaining a direct action under this section
> must plead an actual or threatened injury *that is not solely the
> result of an injury suffered or threatened to be suffered by the
> limited liability company.*

(Emphasis added.) In response, Mach alleges that she suffered an actual injury

because Connors used Wags's (Mach's other limited liability company started in

2012) and Wags West's customer information for Connors's operation of Dirty Dog

Spa, LLC. Mach further asserts that because she "is the sole owner of Wags[,] and

Wags West no longer operates, [Mach] is the one to suffer the injury by [Connors's]

use of the customer information."

[¶13.]     Neither of Mach's contentions on appeal nor her allegations in the

complaint support that she can maintain this direct action against Connors.

Assuming Wags owns the customer information referenced by Mach, Connors's

alleged use of that information would result in injury to *Wags*, and Wags is not a named plaintiff in this action. And although Mach claims to be the sole owner of Wags, she is not, in her individual capacity, a proper party to prosecute an action against Connors for injuries purportedly suffered by Wags (or for her injuries as a member owner stemming solely from Wags's injuries). As SDCL 47-34A-201 provides, "[a] limited liability company is a legal entity distinct from its members" and "[a] member of a limited liability company is not a proper party to proceedings by or against a limited liability company."

[¶14.] Mach also cannot maintain this direct action against Connors to vindicate Connors's alleged use of Wags West's customer information or, as referenced in Mach's complaint, Connors's use of Wags West's assets for payment of her personal expenses. Any injury stemming from such conduct to Mach would result solely from the "injury suffered or threatened to be suffered by" Wags West.

[¶15.] Nevertheless, Mach asserts that a member may bring an action against another member "without any limitations[,]" citing both SDCL 47-34A-410 and -1101(b). However, neither statute applies here. SDCL 47-34A-410 allows such an action to enforce: "(1) [t]he member's rights under the operating agreement; (2) [t]he member's rights under [chapter 47-34A]; and (3) [t]he rights and otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company." The first subsection is not implicated because Mach has not identified an operating agreement for Wags West. The second would incorporate the duties owed by one member to another as set forth in SDCL 47-34A-409. But importantly, SDCL 47-34A-409 provides that

such duties are subject to the provisions in SDCL 47-34A-1101(b) that expressly limit the grounds upon which a member may bring a direct action against another member. Finally, while the third subsection refers more generally to rights and interests of the member, the language is repeated verbatim in SDCL 47-34A-1101(a), which, like SDCL 47-34A-409, incorporates the limitation set forth in SDCL 47-34A-1101(b) that "[a] member maintaining a direct action under this section must plead an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company."

[¶16.]    Because Mach has not pled that she suffered "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by [Wags West]" as required under SDCL 47-34A-1101, Mach's complaint was properly dismissed in as much as it asserts a direct action against Connors by Mach for Connors's alleged use of Wags West's assets and Wags's or Wags West's customer information.

> **B.    Whether Wags West can pursue this action against Connors when the complaint does not allege that Wags West is in the process of winding up the company's business.**

[¶17.]    Connors notes that Wags West was administratively dissolved in January 2019 and acknowledges that a dissolved limited liability company can prosecute actions as part of winding up the company's business. However, Connors asserts that this particular suit could not be instituted because Wags West did not allege in its complaint, "or even affirmatively represent," that it "was engaged in the winding up process." Connors directs this Court to SDCL 47-34A-802(a), which provides that "a limited liability company continues after dissolution only for the

purpose of winding up its business." According to Connors, this law makes "clear that Wags West could only commence a lawsuit as part of the process of winding up the operations and affairs of the business."

[¶18.]       Besides quoting the language of SDCL 47-34A-802(a), Connors identifies no additional authority to support her claim that the complaint must contain a specific allegation that Wags West is currently engaged in the winding up process. Notably, nothing in the statute or statutory scheme requires that the winding up process commence at a particular time or that a company must make an affirmative declaration that the winding up process has begun before it can prosecute an action relating to the company's property. Under SDCL 47-34A-810(c), "[a] company administratively dissolved continues its existence but may carry on only business necessary to wind up and liquidate its business and affairs under § 47-34A-802[.]" The type of actions that may be taken during this process are identified in SDCL 47-34A-803(c): "[a] person winding up a limited liability company's business may . . . preserve the company's business or property as a going concern for a reasonable time, [and] prosecute . . . actions and proceedings[.]"[2] Because Wags West instituted this suit while it had been administratively dissolved

---

2.       SDCL 47-34A-803(c) provides in full:

> A person winding up a limited liability company's business may preserve the company's business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the company's business, dispose of and transfer the company's property, discharge the company's liabilities, distribute the assets of the company pursuant to § 47-34A-806, settle disputes by mediation or arbitration, and perform other necessary acts.

but not yet terminated as a legal entity, Wags West could institute this action against Connors.

### C. Whether the complaint fails to state a claim upon which relief can be granted to Wags West.

[¶19.] It is well settled that "[a] complaint need only contain a short plain statement of the claim showing the pleader is entitled to relief and a demand for judgment for the relief to which the pleader deems himself entitled." *Nooney*, 2015 S.D. 102, ¶ 9, 873 N.W.2d at 499; *see* SDCL 15-6-8(a). We "accept the material allegations as true and construe them in a light most favorable to the pleader to determine whether the allegations allow relief." *Sisney*, 2008 S.D. 70, ¶ 8, 754 N.W.2d at 809. Further, "a complaint need not have detailed factual allegations[.]" *Nooney*, 2015 S.D. 102, ¶ 9, 873 N.W.2d at 499. However, the complaint "must contain more than labels and conclusions and a formulaic recitation of the elements of a cause of action." *Id.* "These rules contemplate a 'statement of circumstances, occurrences and events in support of the claim presented.'" *Sisney*, 2008 S.D. 70, ¶ 13, 754 N.W.2d at 810 (citation omitted).

[¶20.] Before we examine the sufficiency of the allegations in the complaint, we address Connors's argument that Wags West's complaint fails as a matter of law because certain allegations are couched in terms of being "upon information and belief." According to Connors, when the circumstances establish that the facts are solely within the knowledge of the opposing party, "[a]llegations prefaced or couched in terms of only being 'upon information and belief' are insufficient to withstand dismissal unless an explanation for the basis of this belief is set forth[.]" She directs

this Court to two cases to support her argument, but neither case supports dismissal of Wags West's complaint here.

[¶21.]     In the first case, this Court—in 1931—held that "[a] statement upon information, without alleging that it is also based upon the pleader's belief is insufficient, and must be eliminated from consideration when a pleading is challenged by demurrer." *N. Fin. Corp. v. Midwest Com. Credit Co.*, 59 S.D. 282, 239 N.W. 242, 244 (1931).  Initially, we note that *Northern Finance* was decided under the prior version of the statute governing the general rules of pleading.  *See id.* (citing Section 2361, Rev. Code 1919).  The current pleading practice rules only require "[a] short and plain statement of the claim[.]"  SDCL 15-6-8(a).  "Thus, under modern pleading practice, pleadings need only reflect the nature of the claim asserted and the relief requested."  *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 13, 729 N.W.2d 335, 341.  In any event, Wags West's complaint alleges that "upon information and belief" Connors used Wags West's assets for personal use and used Wags West's customer information for Dirty Dog Spa, LLC.  Therefore, unlike in *Northern Finance*, Wags West's allegations were stated to be based both upon Wags West's *information* and *belief,* and not simply "upon information."

[¶22.]     The second case—*Pope v. Federal Home Loan Mortgage Corp.*—simply stands for the proposition that alleging something "upon information and belief" is insufficient if the allegation does not rise above speculation.  *See* 561 Fed. Appx. 569, 573 (8th Cir. 2014).  In *Pope*, the plaintiff challenged a foreclosure of its property, claiming on "information and belief" that there was an unrecorded assignment of the mortgage by Wells Fargo to the defendant.  *Id.*  Noting that this

sole allegation was the basis of the claim, the court held that it was insufficient because the plaintiffs "provide[d] no facts that would lead to the plausible inference that an unrecorded assignment does exist." *Id.* Similarly, we must determine whether the allegations based upon information and belief in Wags West's complaint here are "enough to raise a right to relief beyond the speculative level" on each of the causes of action alleged. *See Sisney*, 2008 S.D. 70, ¶ 7, 764 N.W.2d at 808 (citation omitted).

### i. Breach of the duty of loyalty

[¶23.] In its complaint related to this claim, Wags West asserts that Connors "breached her duty of loyalty to [Wags West] by competing directly against [the company] and by diverting customer information from [the company] for her benefit." In response, Connors contends that the claim fails as a matter of law "because the record establishes that Wags West, through the deliberate choice of Ms. Mach, did not provide pet grooming services or actively engage in business after December 31, 2017[,]" and therefore, Connors could not have competed against Wags West when she opened Dirty Dog Spa, LLC on January 1, 2018.[3] Connors

---

3. Wags West asserts that Connors's contention that "Wags West ceased all operations as of December 31, 2017" is untrue. As support, Wags West directs this Court to a post on a joint social media account for Wags and Wags West that, in Wags West's view, shows only that it announced that the Wags West location will be changing to Dirty Dog Spa, LLC on January 1, 2018, not that Wags West was ceasing to operate. Wags West also refers to a social media post from Dirty Dog Spa, LLC's account indicating that Connors began operating her business prior to December 31, 2017. These social media posts are matters outside the pleadings and may not be considered when reviewing the motion to dismiss. *See Nooney*, 2015 S.D. 102, ¶ 7, 873 N.W.2d at 499 ("[a] court may not consider documents 'outside' the pleadings when ruling on a motion to dismiss for failure to state a claim").

also asserts that because Wags West voluntarily closed and was no longer providing services, there were no customers for her to divert from Wags West. Finally, Connors claims that Wags West's complaint fails because it alleges no injury or harm "that can be clearly traced to an improper act or omission by Ms. Connors."

[¶24.]    Under SDCL 47-34A-409(b):

> A member's duty of loyalty to a member-managed company and its other members is limited to the following:
> (1) To account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;
> (2) To refrain from dealing with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and
> (3) To refrain from competing with the company in the conduct of the company's business before the dissolution of the company.

[¶25.]    Accepting Wags West's allegations in the complaint as true, Connors began operating Dirty Dog Spa, LLC prior to Wags West being administratively dissolved. It is thus plausible that she may have violated her duty not to operate a company in the conduct of Wags West's business before Wags West's dissolution. *See* SDCL 47-34A-409(b)(3). It is also plausible from the allegations in the complaint that Connors may have failed to "hold as a trustee" for Wags West the company's property—its customer information—by using this information for her benefit. *See* SDCL 47-34A-409(b)(1). Finally, although Wags West did not identify a specific injury, the fact of injury is apparent from the allegations themselves. Because the contentions in the complaint constitute statements of "circumstances,

occurrences, and events[,]" *see Sisney*, 2008 S.D. 70, ¶ 13, 754 N.W.2d at 810 (citation omitted), that could establish the elements of a breach of the duty of loyalty claim, this cause of action was improperly dismissed.

### ii. Breach of the duty of care

[¶26.] Under SDCL 47-34A-409(c), "[a] member's duty of care to a member-managed company and its other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." Wags West's complaint asserts that "[Connors] breached her duty of care by competing directly against [Wags West] and by diverting customer information from [Wags West] for her benefit."

[¶27.] In response, Connors advances the same arguments she asserted in opposition to Wags West's breach of the duty of loyalty claim—that Wags West was not in competition with Dirty Dog Spa, LLC because Wags West had stopped providing services before Dirty Dog Spa, LLC began operating, and therefore, Wags West did not have customers which Connors could divert. However, just as with the previous cause of action, Wags West's allegations in the complaint related to the breach of the duty of care claim are sufficient to survive a motion to dismiss under SDCL 15-6-12(b)(5).

[¶28.] In particular, as alleged in the complaint, Connors began operating a company that provides the exact same services as Wags West before Wags West wound up its business. Further, the complaint alleges that Connors began operating this company, Dirty Dog Spa, LLC, out of the same leased commercial

space in which Wags West had been operating since Connors and Mach formed the company in 2016. Therefore, it can be reasonably inferred that Dirty Dog Spa, LLC began servicing Wags West customers.

[¶29.]    As this Court said in *Sisney*, "review is conducted 'on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]'" 2008 S.D. 70, ¶ 18, 754 N.W.2d at 812 (alteration in original) (citation omitted). Because Wags West alleged facts sufficient to support a plausible claim that Connors engaged in intentional conduct (directly competing against Wags West and wrongly taking customer information for her new company) and thereby breached her duty of care and caused injury to Wags West, this cause of action was also improperly dismissed.

### iii. Conversion

[¶30.]    "Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 20, 652 N.W.2d 756, 766. To prove conversion, the plaintiff must show that the:

> (1) [plaintiff] owned or had a possessory interest in the property; (2) [plaintiff's] interest in the property was greater than the [defendant's]; (3) [defendant] exercised dominion or control over or seriously interfered with [plaintiff's] interest in the property; and (4) such conduct deprived [plaintiff] of its interest in the property.

*Western Consolidated Co-op v. Pew*, 2011 S.D. 9, ¶ 22, 795 N.W.2d 390, 397 (alteration in original) (quoting *First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton*, 2008 S.D. 83, ¶ 38, 756 N.W.2d 19, 31).

[¶31.] In its complaint, Wags West asserts that it "had owned or had a possessory interest in [the company's] assets and customer list"; its interest was greater than Connors's; Connors "exercised dominion or control over or seriously interfered with [Wags West's] interest" in the assets and customer list; and Connors's conduct deprived Wags West of its interest in the assets and customer list.[4]

[¶32.] A fair reading of Wags West's complaint reveals sufficient allegations that are not purely speculative to support a claim of conversion. In particular, the complaint alleges that Connors and Mach formed Wags West in 2016 as an expansion of her existing business so that Connors could go into business with her. They leased a commercial space on South Louise Avenue for the new company to operate, and it can be inferred from the pleadings that Connors was the one operating the pet grooming business at this location. It can be further inferred that Wags West possessed assets to operate its business at this location.

[¶33.] The complaint alleges that Connors began operating Dirty Dog Spa, LLC in the same location on South Louise Avenue from which Wags West had been operating. When Connors started operating as Dirty Dog Spa, LLC, Wags West had not been administratively dissolved and had not wound up its business affairs. Thus, it can be plausibly inferred that Wags West still had assets that could be wrongly converted, including its customer list and that Connors, in operating Dirty

---

4. The complaint also refers to Connors's use of customer information from Wags (Mach's original business which is still in operation). Although Mach asserted in her brief to the circuit court that Wags had shared this customer information with Wags West, Wags was not named as a plaintiff in the complaint at issue.

Dog Spa, LLC, exercised dominion and control over Wags West's assets and deprived Wags West of its interest in the property.

[¶34.]     Finally, the injury that would result to Wags West from Connors's misuse of the company's assets and exercise of control over the customer list is apparent from the allegations themselves.  Therefore, if, as Wags West alleges, Connors wrongfully used the company's assets to pay for her personal expenses and converted the customer list for the benefit of her new company, such conduct, if proved, could constitute conversion, and the cause of action was improperly dismissed.

### iv. Unjust enrichment

[¶35.]     "Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'"  *Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 15, 658 N.W.2d 783, 788 (citation omitted).  To prove unjust enrichment, Wags West must establish that Connors received a benefit, she was aware she was receiving a benefit, and that it would be inequitable to allow her to retain the benefit without reimbursing Wags West.  *See id.*  Wags West's complaint alleges Connors received a benefit from her use of its assets and customer list and was "cognizant of the benefit she received[.]"  The complaint also alleges that "[i]t would be unconscionable for [Connors] to enjoy the benefits of [Wags West's] assets and customer list without paying [Wags West] for the same" and Connors would thus be unjustly enriched.  Contrary to Connors's

assertion, Wags West has adequately alleged facts that could establish the elements necessary for a claim of unjust enrichment.[5]

### v. Punitive damages

[¶36.] Wags West's complaint contains a separate cause of action for punitive damages. While "[t]here is no independent cause of action for punitive damages[,]" *see O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 25, 876 N.W.2d 486, 496, punitive damages may be sought in conjunction with an intentional tort such as conversion. *See Chem-Age*, 2002 S.D. 122, ¶ 19 n.5, 652 N.W.2d at 766 n.5 (providing that a conversion claim "may give rise to punitive damages"). Because Wags West's conversion claim was sufficiently pled, she could also request punitive damages. *See Olson-Roti v. Kilcoin*, 2002 S.D. 131, ¶ 28, 653 N.W.2d 254, 260 (providing that punitive damages may be pursued when supported by a cause of action).

### D. Whether the motion for leave to file an amended complaint should have been granted.

[¶37.] Mach and Wags West assert for the first time in their reply brief to this Court that the circuit court should have granted their motion for leave to file an amended complaint. The issue is not one noticed on appeal by Mach and Wags West. Further, a review of the record reveals that Mach and Wags West did not

---

5. In *Paweltzki v. Paweltzki*, we noted that the initial question when considering an unjust enrichment claim is "whether, as a matter of law, [a party can] seek the equitable remedy of unjust enrichment when [there is] available to them an adequate remedy at law" for the same alleged wrongdoing. 2021 S.D. 52, ¶ 40, 964 N.W.2d 756, 769. Whether Wags West has adequate remedies at law to address Connors's alleged misuse of its corporate assets via its conversion and statutory claims such that it cannot proceed in equity via its claim for unjust enrichment was not raised before the circuit court or on appeal. Therefore, we leave that question for another day.

request that the circuit court rule on their motion after the circuit court ruled on Connors's motion to dismiss. We have repeatedly said that "[a] party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer." *Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 (quoting *Agee v. Agee*, 1996 S.D. 85, ¶ 21 n.4, 551 N.W.2d 804, 807 n.4); *Am. Legion Home Assoc. v. Pennington Cnty.*, 2018 S.D. 72, ¶ 41 n.4, 919 N.W.2d 346, 355 n.4. Therefore, we decline to address this argument.

[¶38.] Affirmed in part and reversed in part and remanded for further proceedings.

[¶39.] JENSEN, Chief Justice, and KERN and MYREN, Justices, concur.

[¶40.] SALTER, Justice, deeming himself disqualified, did not participate.