AETNA LIFE INSURANCE COMPANY, Plaintiff and Appellee,

v.

Richard SATTERLEE a/k/a Richard S. Satterlee; Gladys a/k/a Gladys L. Satterlee; Leo E. Kirby; Elizabeth (Libby) Kirby; First National Bank of Gordon (Gordon, Nebraska); Donald D. Huber; Elsie Huber; William Huber; Herbert F. Huber; Delores Huber; Alvin D. Huber; Leon Huber; and Stockman's National Bank (Rushville, Nebraska), Defendants,

and

Leo E. Kirby and Elizabeth (Libby) Kirby, Defendants and Appellants.

No. 17168.

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1991.

Decided Sept. 18, 1991.

not recover damages from a company which crushed his hand.

J.M. Grossenburg Winner, for plaintiff and appellee.

Jean M. Massa Winner, Thomas J. Nicholson, Sioux Falls, for defendants and appellants.

MEIERHENRY, Circuit Judge.

## FACTS

Leo and Elizabeth Kirby (Kirby) appeal from a Summary Judgment Order which

granted Aetna Life Insurance Company (Aetna) ownership of a 1989 wheat crop and denied Kirby's claim for summer fallow expenses. This action stems from a foreclosure judgment Aetna obtained against Richard and Gladys Satterlee (Satterlee) on certain farm land. The foreclosure action also named Kirby as well as several other defendants who may have claimed an interest in the real estate. Only Satterlee and Kirby filed answers in the foreclosure action. Aetna obtained a Judgment of Mortgage Foreclosure on November 10, 1987. A stipulation entered into by Aetna, Satterlee and Kirby was incorporated into the Judgment. Two issues arose subsequent to the foreclosure action: (1) the ownership of the crop planted by Aetna during the period of redemption and (2) claimed expenses of Kirby for summer fallowing.

The basis of Aetna's foreclosure action was a loan made by Aetna in 1978 to the prior owners of farm land in Jackson, Mellette, and Todd Counties. The loan was for the sum of $700,000. In 1983 Satterlee purchased the property subject to the terms and conditions of Aetna's note and mortgage. Kirby entered into an agreement with Satterlee in 1986 to purchase the property on a contract for deed. In 1984, Satterlee defaulted and Aetna received no further payments on the loan.

The stipulation incorporated into the Judgment was signed on August 1, 1987 by Aetna, Kirby, and Satterlee. They agreed that Satterlee and Kirby would withdraw their answers and defenses and that Aetna would proceed with the mortgage foreclosure sale. Satterlee and Kirby agreed not to contest the foreclosure sale and not to file an intervening bankruptcy. Without objection from Kirby, the stipulation was incorporated into the Mortgage Foreclosure Judgment of November 10, 1987. The stipulation contained the following provisions:

7) Approximately 1,120 of the tillable acres are planted with wheat and approximately 160 acres are planted with barley, and the balance of approximately 1,750 acres is in summer fal-

low. During the period of redemption, Defendants Satterlees and Kirbys will control in a good farmerlike manner noxious weeds and farm so as to prevent unnecessary soil erosion using proper conservation techniques,

* * * * * *

9) Defendants Satterlees and Kirbys reserve all of their statutory redemption rights.

10) Plaintiff [Aetna] shall have and is hereby granted the right at its option to enter and use the mortgaged property during the period of redemption for the purpose of performing or having its agents and/or contracting parties perform whatever summer fallow and other normal preparation work Aetna elects to have performed on the mortgaged property for the crop year 1989 so long as the exercise and performance of such rights by Aetna shall not unreasonably interfere with Defendants [sic] farming operation on the mortgaged property.

The one-year redemption period commenced on December 10, 1987. No redemption occurred and Aetna received the Sheriff's Deed on December 15, 1988. Pursuant to the stipulation, Satterlee and Kirby farmed part of the mortgaged property during the redemption period. In the fall of 1988, Aetna's agents entered the property and planted 925 acres of winter wheat to be harvested in the summer of 1989. Kirby claimed ownership of the crop planted by Aetna and began to harvest the crop in July of 1989. At Aetna's request, the court issued a preliminary injunction prohibiting Kirby from harvesting or interfering with Aetna's harvest of the crop. The court allowed Aetna to harvest the crop and to deposit the net proceeds with the court and to submit an accounting.

On March 30, 1990 the court entered a summary judgment in favor of Aetna. The accounting showed that the gross income from the 1989 wheat crop was $33,722; but after expenses of $42,017, Aetna suffered a net loss. The court determined that Kirby had waived his rights to the 1989 crop in the Stipulation Agreement, that the crop

belonged to Aetna, and that Kirby was not entitled to expenses for fallowing the 1989 crop. We affirm.

### ISSUES

I.   Whether Kirby's claim to the 1989 wheat crop is moot.

II.  Whether Aetna was entitled to the 1989 winter wheat crop planted in 1988 during the period of redemption.

III. Whether Kirby was entitled to reimbursement for summer fallowing expenses.

We agree with the trial court upon issues II and III and further find that the issue is not moot.

### I.  MOOTNESS

By notice of review, Aetna argues that Kirby's claims are moot. Before an appeal will be dismissed on the grounds that the questions involved have become moot it must appear clearly and convincingly that the actual controversy has ceased; it must appear that the only judgment which could be entered would be ineffectual for any purpose and would be an idle act concerning rights involved in the action. Save *Centennial Valley Ass'n., Inc. v. Schultz*, 284 N.W.2d 452, 455 (S.D.1979). Kirby's claim is for the crop and ownership of the crop. A judgment in this case awarding Kirby the actual crop or ownership of the crop may have entitled him to a government disaster payment. Such a possibility negates any argument on Aetna's part that this controversy is moot.

### II.  ENTITLEMENT TO 1989 CROPS

Kirby argues that SDCL 21–47–24 grants him the right to the 1989 crops and takes precedence over the stipulation of the parties. The last sentence of SDCL 21–47–24 reads as follows: "Whenever crops have been sown on the mortgaged premises, be-

fore the issuance of a sheriff's deed, the mortgagor shall be entitled to the crops grown thereon and the right to enter on the premises to harvest the crops after the issuance of the deed." [1]

The foreclosure laws specifically give the mortgagor the right to redeem and the right to harvest the crop grown during the redemption period. This Court has held, in the context of assignments, that the right of possession and the right to rents and profits remain in the mortgagor until the expiration of the period of redemption. However, the mortgagor can assign away its right to rents and profits. *Aetna Life Ins. Co. v. McElvain*, 363 N.W.2d 186 (S.D.1985); *State of Wis. Inv. Bd. v. Hurst*, 410 N.W.2d 560 (S.D.1987). A stipulation by the mortgagor agreeing to give his possessory interest in the land or the crops during redemption is also allowable and enforceable. Stipulations may be contractual in nature and the law of contracts applies. *State v. McKay*, 234 N.W.2d 853 (N.D.1975).

Satterlee and Kirby, by agreement, gave Aetna the right to prepare the land and plant the 1989 crop during the redemption period. Aetna, in reliance upon the agreement, entered upon the land, planted and harvested the wheat crop. Kirby made no objection at the time Aetna entered the land and planted the crop. Even though Aetna realized a net loss from the crop, Kirby requests the crop proceeds and ownership without the costs.[2] To allow Kirby to claim the crop after Aetna had planted and harvested would be unjust enrichment and contrary to the agreement between the parties.

The court found that paragraph 10 of the August 1, 1987 Stipulation Agreement between Aetna and Kirby contained no ambiguity and that Aetna rightfully harvested the crop and was entitled to the crop and to

---

1.  SDCL 15–19–17.1 also addresses the same issue and reads as follows: "Whenever crops have been grown on the debtor's premises, before the issuance of sheriff's deed, the debtor shall be entitled to the crops grown thereon and the right to enter on the premises to harvest the crops after the issuance of the deed."

2.  The record indicates that Kirby's main interest in the crop was to be able to claim ownership and thereby collect a $15,000 government disaster payment for which he had applied.

the proceeds. We agree. The trial court further found that Kirby waived any rights to the 1989 crop by entering into the August 1, 1987 Stipulation Agreement which defined the land-use rights and gave Aetna a possessory interest in the property during the period of redemption.

Under SDCL 15–6–56(c) summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is proper, a court must first determine whether there is a genuine issue of material fact, and secondly, whether the moving party is "entitled to a judgment as a matter of law." SDCL 15–6–56(c). *See Groseth Intern. Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). In reviewing a summary judgment our decision rests upon the premise "that affirmance of such a judgment is proper if there are no genuine issues of material fact and there exists any basis which would support the trial court's ruling." *Production Credit Ass'n of the Midlands v. Wynne, et al.*, 474 N.W.2d 735 (S.D.1991); *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460 (S.D.1991); *Blote v. First Federal Sav. & Loan Ass'n.*, 422 N.W.2d 834, 836 (S.D.1988).

Since the parties concede that there is no genuine issue of material fact, the court's ruling on the law can only be set aside if the court erred. The court ruled that the stipulation agreement defined the rights of the parties. The construction of a valid agreement containing unambiguous language is a question of law for the court. *Delzer Const. Co. v. South Dakota State Bd.*, 275 N.W.2d 352 (S.D.1979); *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149 (S.D.1986); *Van Zee v. Witzke*, 445 N.W.2d 34, 36 (S.D.1989). We find the court did not err in concluding that Aetna owned the 1989 wheat crop.

## III. REIMBURSEMENT FOR SUMMER FALLOW

Kirby also contends that the court erred in denying a cash allowance for the expenses he incurred in fallowing the land during the summer of 1988. Aetna specifically told Kirby in a letter dated April 28, 1988 not to do any summer fallowing for Aetna's 1989 crop, unless a prior written agreement had been signed.[3] Aetna had hired a professional farm manager specifically to arrange and supervise the preparation, planting and harvesting of the 1989 wheat crop. Without Aetna's consent or agreement, Kirby entered the land and summer fallowed certain portions including some of the acreage on which Aetna planted wheat in the fall of 1988. Kirby indicated in his deposition that he summer fallowed because he still had hopes of negotiating with Aetna for retention of the land. It is clear from the evidence that Kirby fallowed the land for Kirby's own benefit not for the benefit of Aetna.

Kirby claims restitution pursuant to theories of a contract implied in fact, a contract implied in law and unjust enrichment. Aetna argues that Kirby is owed no compensation under an implied contract theory and also that Kirby's summer fallowing was in compliance with the obligation under the agreement wherein Kirby agreed

3. A Letter from Aetna's attorney to Satterlee and Kirby dated April 28, 1988 officially reminded them that Aetna would receive a sheriff's deed the latter part of the year of 1988. The letter also reminded Satterlee and Kirby of the Stipulation and particularly quoted paragraph 10. The letter also stated:
You are further notified that you are not to do any seed bed preparation for summer fallow, or other preparation work whatsoever on Aetna's security for the 1989 crop year. The only exception to this would be, and only if, and only to the extent that a *prior* written agreement with Aetna, satisfactory to Aetna, through Aetna's farm management would be entered into for the performance of such work, and to date there is no agreement concerning this matter at all.
Aetna has not decided at this point how its farming work is going to be performed or who Aetna will employ for the purpose of performing such work.
If any part of this letter is not understood in every detail please feel free to immediately contact me.

"to control in a good farmerlike manner noxious weeds and farm so as to prevent unnecessary soil erosion using proper conservation techniques."[4]

Kirby and Aetna entered into a stipulation which clearly defined the rights of each party concerning the 1989 crops and specifically gave Aetna the right to enter the land and prepare, plant and harvest the 1989 crops. Aetna exercised its rights and decided to enter the land during 1988 and prepare and plant the next season's crops. Aetna clearly told Kirby not to fallow in anticipation of 1989 crops unless a written agreement existed.

Since we have determined that the stipulation entered into by the parties is binding and controls the rights of the parties, Kirby's claim for restitution under a theory of implied contract is unfounded. *Thurston v. Cedric Sanders Company*, 80 S.D. 426, 125 N.W.2d 496 (1963). "[W]here there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or suit on quantum meruit." *Ball v. Dolan*, 21 S.D. 619, 114 N.W. 998 (1908) cited in *Thurston, supra*, 125 N.W.2d at 498. Kirby's claim does not have merit because the stipulation was a valid express contract as to the parties' rights of possession of the land during the redemption period. Kirby's actions were in direct opposition to Aetna's possessory rights and in direct opposition to Aetna's instruction not to fallow the land. In fact, Leo Kirby admits that his actions were contrary to the agreed stipulation and that he intended to deny its enforceability and claim the 1989 crops. Kirby has failed to establish sufficient evidence which would prove that an implied in fact or implied in law contract exists.

The court denied Kirby's claim for fallowing costs because it would unjustly enrich Kirby at Aetna's expense. We ultimately agree with the court's holding for a different reason. As a general rule restitution provides that a person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of a third person. Restatement of Restitution, § 112 (1937). Kirby's actions do not meet the exception. Kirby never intended to summer fallow for the protection of anyone's interest but his own. We find that the court did not err by denying Kirby's claim for payment. The judgment must be upheld if it is right for any reason. *Matter of Dependency and Neglect of A.L.*, 442 N.W.2d 233 (S.D.1989).

The decision of the circuit court is affirmed.

WUEST, and HENDERSON, and SABERS, JJ., concur.

HERTZ, Acting J., concurs.

MEIERHENRY, Circuit Judge, for MILLER, C.J., disqualified.

AMUNDSON, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

---

**4.** Leo Kirby in his deposition defined summer fallowing as "working the land to preserve the moisture by keeping the weeds down ... and a mulch on top to preserve moisture."