#27114-a-GAS
**2015 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DOWLING FAMILY PARTNERSHIP, a
South Dakota General Partnership and
DOWLING BROTHERS PARTNERSHIP,
a South Dakota General Partnership,                Plaintiffs and Appellees,

     v.

MIDLAND FARMS, LLC, an
Iowa Limited Liability Company;                    Defendant and Appellant.

     and

LANNY DEMOTT,                                      Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HAAKON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA DEVANEY
Judge

* * * *

GREGORY A. EIESLAND of
Johnson Eiesland Law Offices, PC
Rapid City, South Dakota

THOMAS P. MAHER
THOMAS M. MAHER of
Maher Law Office, LLP
Pierre, South Dakota                               Attorneys for plaintiffs
                                          and appellees.

WILLIAM G. TAYLOR
JAMES E. MOORE of
Woods, Fuller, Shultz & Smith PC
Sioux Falls, South Dakota                          Attorneys for defendant
                                          and appellant.

* * * *

ARGUED FEBRUARY 17, 2015
OPINION FILED **06/17/15**

#27114

SEVERSON, Justice

[¶1.]     Midland Farms, LLC, appeals the circuit court's denial of its request for restitution from Dowling Family Partnership and Dowling Brothers Partnership (collectively, "the Partnerships"). Midland asserts that the Partnerships were unjustly enriched by receiving the proceeds from a winter wheat crop planted at the partial expense of a third party. The Partnerships assert that Midland breached a lease agreement with the Partnerships and should not be granted equitable relief. We affirm.

**Facts and Procedural History**

[¶2.]     The Partnerships were formed by brothers Scott Dowling ("Dowling") and Tracy Dowling for the purposes of farming and raising livestock. Dowling was the managing partner of the Partnerships at all relevant times. Midland is a limited liability company formed in 2008. It owns approximately 33,000 acres of farmland in Haakon and Stanley Counties, South Dakota. Scott DeMott is a farmer and insurance agent who resides in Little Rock, Arkansas. DeMott was a managing member of Midland at all relevant times.

[¶3.]     The parties entered into a cash farm lease on May 18, 2009, for approximately 10,276 acres. The lease terminated after the 2009 crop harvest but required Midland, "prior to renting the leased premises for the 2010 crop year, [to] give Tenant a first opportunity to rent the leased premises." In 2010, the parties executed two leases: one crop-share farm lease for approximately 13,384 acres and one cash farm lease for approximately 15,725 acres. Similar to the 2009 lease, the 2010 cash farm lease contained a provision that required Midland to "give Tenant a

first opportunity to rent the leased premises" before "renting the leased premises for the 2011 crop year[.]" On January 19, 2011, Midland and the Partnerships executed a cash farm lease for approximately 29,012 acres at $55 per acre. That lease contained the following provision:

> TERM. The term of the cash farm lease for the leased premises shall commence on the ___ day of October, 2010, and shall terminate after the 2012 crop harvest, unless otherwise extended, terminated, or provided for herein, except as provided in 8e.
>
> Landlord will give tenant *option to rent* leased premises for the 2013, 2014 and 2015 crop year. *Terms and conditions to be agreed to by Landlord and Tenant.*

[¶4.] In April 2012, DeMott called Dowling and said, "You have the first right of refusal to rent. Do you want to rent it in the future?" After Dowling indicated he wished to continue leasing the property at the same price, DeMott said, "We gave you your first right of refusal for the lease. We're going to market this because we think we have other—because we have other options to look at." In an email dated July 23, 2012, DeMott further stated:

> Also per paragraph 3 Midland Farms has given you the option to lease our farm for 2013, 2014 and 2015 crop years per phone conversation with me at the end of April 2012. You indicated you would rent the farm with the same expiring cash rent of $55 per acre. Midland Farms is not accepting this offer. We have other qualified interested parties willing to lease our farm, if you have any serious interest in renting all or part of Midland Farms, contact us by August 1, 2012.

DeMott and Dowling met in person on July 25, 2012, to discuss terms and conditions of a potential lease for 2013, 2014, and 2015. DeMott told Dowling that Midland required a lease price of $70 per acre and an irrevocable letter of credit for the full amount "ASAP" to secure the rent payment for the 2013 crop year.

Dowling's banker approved the new lease for the 2013, 2014, and 2015 crop years at the agreed upon price of $70 per acre and testified that the bank would have approved a formal irrevocable letter of credit if the bank had been provided with the final written lease documents.

[¶5.] Dowling called DeMott on August 1, 2012, and accepted the offer. Thereafter, Dowling entered into a contract to purchase a new sprayer for $324,000 and began harrowing the Midland property in August at a cost of $46,000. Five days after Dowling agreed to DeMott's terms, on August 6, DeMott emailed Dowling and asked, "What name do I use for you on our farm lease?"[1] However, only two days later, DeMott called Dowling and told him that Midland had sold the farm to a third party, Clement Farms. The following day, on August 9, Dowling answered DeMott's August 6 inquiry and provided the tenant name for the lease. No new written lease agreement was formally drafted for the 2013, 2014, or 2015 crop years. Instead, on August 13, 2012, DeMott emailed Dowling to inform him that Midland was seeking a legal determination in circuit court that the parties had not extended the prior lease and warning him to cease farming operations on Midland property.

[¶6.] Midland served a notice to quit and vacate the property on the Partnerships on August 20, 2012. The Partnerships filed a complaint for a

---

1. Prior to the meeting between Dowling and DeMott on July 25, 2012, Scott and Tracy Dowling entered into an agreement to dissolve the Partnerships. The brothers parted ways in 2013. Rather than dissolve the Partnerships, however, the partnership interests of the other Dowling family members were transferred to Scott. Afterward, Scott continued farming while Tracy focused primarily on raising livestock.

declaratory judgment and other relief on September 7, 2012. The circuit court consolidated these two actions on October 30, 2012. In the meantime, Midland entered into a lease agreement with Clement on September 21, 2012, and a purchase agreement on September 27, 2012. Clement took possession of the land in late September 2012 and planted winter wheat on approximately 12,269 acres at a cost of $1,048,356.08. Both the lease and purchase agreements acknowledged the Partnerships' claim to the leased premises and included contingencies for an adverse ruling in the pending litigation. Midland and Clement agreed that in the event that the circuit court decided the Partnerships were entitled to possession of any portion of the land leased to Clement, their lease would terminate, Midland would reimburse Clement for its expense in planting the winter wheat, and Midland would pay Clement up to an extra $100,000 for its indirect expenses.

[¶7.] The circuit court entered findings of fact and conclusions of law on March 12, 2013. The court found that an enforceable contract existed between the Partnerships and Midland and that the Partnerships exercised their right to lease the property for the 2013, 2014, and 2015 crop years. According to an agreement struck between the parties while the litigation was still pending, the Partnerships paid the rent for the 2013 crop year on March 18, 2013, and were immediately restored to possession of the leased property. Both Clement and the Partnerships obtained crop insurance for the winter wheat planted by Clement, and over two-thirds of those acres did not go to harvest. Clement did not receive any insurance proceeds, but the Partnerships received two payments in the amounts of $1,519,390

and $39,429.[2] Clement joined the litigation, seeking reimbursement for the expenses it incurred in planting the winter wheat, but Midland later settled with Clement and agreed to reimburse Clement a total of $1,187,500.

[¶8.] The Partnerships and Midland went to trial a second time. The Partnerships sought damages for being denied possession of the property from August 2012 to March 2013, and Midland sought restitution from the Partnerships for the amount it paid to Clement as reimbursement for Clement's planting expenses. The circuit court found that the Partnerships did not suffer damage, that the Partnerships were not unjustly enriched, and that Midland had unclean hands. Midland appeals, raising the following issues:

1. Whether the circuit court erred in denying Midland's motion for summary judgment and concluding Midland breached its lease with the Partnerships.

2. Whether the Partnerships were unjustly enriched.

3. Whether the doctrine of unclean hands prevents Midland from seeking restitution for unjust enrichment.

**Standard of Review**

[¶9.] "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621 (quoting *Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 11, 763 N.W.2d 800, 804). We view the evidence "most favorably to the nonmoving party and reasonable

---

2. The Partnerships also received $500,812 from selling the failed crop as hay. The remaining winter wheat crop went to harvest and provided a further $632,313 income. Thus, the Partnerships received a total of $2,691,944.

doubts should be resolved against the moving party." *Id.* (quoting *Saathoff*, 2009 S.D. 17, ¶ 11, 763 N.W.2d at 804).

[¶10.]     "Unjust enrichment is an equitable concept." *Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 9, 658 N.W.2d 783, 786. The doctrine of unclean hands—or equitable disqualification—is likewise an equitable concept. *See* Restatement (Third) of Restitution & Unjust Enrichment § 63 (2011). "We review equitable actions for abuse of discretion." *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850 (quoting *Englehart v. Larson*, 1997 S.D. 84, ¶ 12, 566 N.W.2d 152, 155). "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Martin*, 2015 S.D. 2, ¶ 7, 859 N.W.2d 600, 603 (quoting *Gartner*, 2014 S.D. 74, ¶ 7, 855 N.W.2d at 850). Under an abuse of discretion standard of review, the circuit court's "factual determinations are subject to a clearly erroneous standard[,]" *Gartner*, 2014 S.D. 74, ¶ 8, 855 N.W.2d at 850 (quoting *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203) (internal quotation mark omitted), but we review its conclusions of law under a de novo standard, *id.*

## Analysis and Decision

[¶11.]     *1.    Whether the circuit court erred in denying Midland's motion for summary judgment and concluding Midland breached its lease with the Partnerships.*

[¶12.]     The Partnerships assert that the portions of the 2012 crop year lease quoted above, *see supra* ¶ 3, gave the Partnerships a right of first refusal. Midland asserts the lease is evidence that the parties had not yet agreed on all terms essential to a contract. According to Midland, the lease "states that the terms and

conditions of a future lease must be agreed to by the parties, which precludes the provision from constituting an enforceable option contract." The circuit court determined the "option" provision was ambiguous and, based in part on the communications exchanged between DeMott and Dowling, found that the Partnerships had proven the existence of a valid option contract. Midland argues that the 2012 crop year lease was not ambiguous and that the circuit court "erred in considering extrinsic evidence to determine that the lease provision was an enforceable option."

[¶13.]     "A contract is ambiguous when application of rules of interpretation leave[s] a genuine uncertainty as to which of two or more meanings is correct." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 16, 709 N.W.2d 350, 355 (quoting *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235).

> A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

*Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 10, 618 N.W.2d 725, 727 (quoting *Singpiel v. Morris*, 1998 S.D. 86, ¶ 16, 582 N.W.2d 715, 719). We agree with the circuit court that the contract provision in question is ambiguous. First, the contract—which was authored by DeMott—clearly uses the term "option." The provision also states, "*Terms and conditions to be agreed to by Landlord and Tenant.*" Given the use of the label "option," one interpretation of this provision could be that it intended any *additional* terms and conditions to be agreed to by the parties. On the other hand,

DeMott may have envisioned this provision as a right of first refusal and simply applied an incorrect label. Finally, as Midland argues, the word "option" could have been intended to mean simply that Midland would not bar the Partnerships from asking to renew the lease. In any event, the circuit court did not err in concluding the provision at issue is ambiguous.

[¶14.] The circuit court did not err in considering extrinsic evidence. "When contract language is ambiguous, and does not speak to a subject it would normally be expected to, the court may go beyond the four corners of the contract." *LaMore Rest. Grp., LLC v. Akers*, 2008 S.D. 32, ¶ 12, 748 N.W.2d 756, 761 (quoting *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 17, 736 N.W.2d 824, 831-32). Here, the circuit court considered testimony from DeMott and Dowling, as well as the communications that the two parties exchanged leading up to August 2012. In his deposition, DeMott repeatedly said that the existing lease gave the Partnerships a first right of refusal. The previous two leases between the parties included the phrase "first opportunity to rent." When Dowling asked DeMott what price he needed to match, DeMott responded by offering to renew the lease for $70 per acre. The Partnerships accepted the offer on August 1, 2012. DeMott later acknowledged the existence of a lease on August 6 when he asked Dowling, "What name do I use for you on our farm lease?" Based on this evidence, the circuit court concluded that the contested provision was an option and that the Partnerships exercised that option. In their brief to us, the Partnerships characterize the provision as a right of first refusal. Additionally, it is possible the oral and written communications created an agreement independent of the 2012 crop year lease.

[¶15.]     The extrinsic evidence does not support the conclusion that the contested lease provision was intended to function as an option. "An option contract is an irrevocable offer by the owner to sell [or lease] on specified terms and creates a power of acceptance in the optionee." *Advanced Recyc. Sys., LLC v. Se. Props. Ltd. P'ship*, 2010 S.D. 70, ¶ 12, 787 N.W.2d 778, 783. The behavior of the parties makes clear that neither party considered the lease provision to be a true option. This is evidenced by the fact that the parties negotiated a new price per acre in July and August of 2012. The Partnerships have not asserted that they were entitled to lease the property at the previous rate of $55 per acre or at any other previously determined rate. Therefore, the contested lease provision was not an option as written.

[¶16.]     In contrast to an option, a "right of first refusal is a conditional right that ripens into an enforceable option contract when the owner receives a third-party offer to purchase [or lease] the property subject to the right and manifests an intention to sell [or lease] on those terms." *See id.* ¶ 15, 787 N.W.2d at 784. Midland now argues that, "[e]ven if construed as a right of first refusal, however, the lease provision would still not be legally enforceable." Midland bases its argument on *Advanced Recycling Systems*, where we went on to say, "An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the holder of the right of first refusal the right to purchase the same." *Id.* (quoting *Chapman v. Mut. Life Ins. Co. of N.Y.*, 800 P.2d 1147, 1151 (Wyo. 1990)). Midland points out that any right of first refusal the Partnerships might have had applied only to the 29,012

acres the Partnerships leased from Midland. In comparison, the lease Midland entered into with Clement was for 33,297 acres. The circuit court seemed to agree with Midland's legal premise but concluded it was moot as Midland offered to renew the Partnerships' lease at $70 per acre. "Because [the Partnerships] could only accept an offer to [lease the 29,012 acres], its acceptance necessarily would have changed, added to, or qualified the terms of the offer to [lease the entire 33,297 acres]." *See id.* ¶ 18, 787 N.W.2d at 785.

[¶17.] Midland's statement of the contract principles discussed in *Advanced Recycling Systems* is incomplete. Citing the Wyoming Supreme Court's decision in *Chapman*, we said, "If the owner has not manifested an intention to sell the leased premises apart from the whole, the right of first refusal does not ripen into an enforceable option contract to purchase the leased premises." *Advanced Recyc. Sys.*, 2010 S.D. 70, ¶ 15, 787 N.W.2d at 784 (citing *Chapman*, 800 P.2d at 1150-51). Such an intention, however, is manifested when a price is negotiated with a third party for the property subject to the right of first refusal. *Chapman*, 800 P.2d at 1151. As the *Chapman* court went on to explain:

> It is not sufficient that an offer was made on a larger tract including the burdened property. The great majority of courts that have addressed this issue have held a preemptive right may not be defeated by a sale of the property burdened by the right as part of a larger tract.

*Id.* In contrast to *Advanced Recycling Systems*, Midland's negotiations with Clement set a price for the property subject to the Partnerships' right of first refusal: $70 per acre. Therefore, the contested contract provision was a right of first refusal that ripened into an option when Clement offered to rent the relevant acreage from Midland at $70 per acre. "Any other result is necessarily unacceptable

-10-

because 'to allow the owner of the whole to by-pass the optionee merely by attaching additional land to the part under option would render nugatory a substantial right which the optionee had bargained for and obtained.'" *Chapman*, 800 P.2d at 1151 (quoting *Guaclides v. Kruse*, 170 A.2d 488, 495 (N.J. Super. Ct. App. Div. 1961)). Consequently, the circuit court did not err by denying Midland's motion for summary judgment.

[¶18.]    2.    *Whether the Partnerships were unjustly enriched.*

[¶19.]    Midland primarily argues the Partnerships were unjustly enriched by receiving proceeds for the winter wheat planted by Clement without paying the associated costs of planting the crop. "Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" *Hofeldt*, 2003 S.D. 25, ¶ 15, 658 N.W.2d at 788 (quoting *Parker v. W. Dakota Ins'rs, Inc.*, 2000 S.D. 14, ¶ 17, 605 N.W.2d 181, 187). Restitution is not available when the rights and obligations at issue have been defined by contract. *See Johnson v. Larson*, 2010 S.D. 20, ¶ 10, 779 N.W.2d 412, 416 (holding the circuit court erred in imposing restitution against a defendant when the plaintiff's "remedy lay in a claim for breach of contract"). Because there does not appear to be any assertion that Midland has a claim for breach of contract against the Partnerships, we must first determine whether Midland has established the elements necessary to support a claim of unjust enrichment.

[¶20.]    Midland must first show that the Partnerships received a benefit. *Hofeldt*, 2003 S.D. 25, ¶ 16, 658 N.W.2d at 788. Midland argues that the Partnerships were enriched by avoiding a portion of the expense of planting the

12,269 acres of winter wheat planted by Clement, while at the same time receiving proceeds from that crop. The circuit court found that the Partnerships did receive a benefit, but noted that "whether and by how much Dowling was actually *enriched* . . . by Clement's/Midland's incurrence of a portion of the input costs is subject to much debate[.]" According to Midland, whether or not a benefit was conferred on the Partnerships is an issue separate from the amount of recovery. For purposes of establishing the elements of unjust enrichment, Midland argues, the circuit court's statement constitutes a finding in Midland's favor on the first element of its unjust enrichment claim.

[¶21.] Whether a defendant has been enriched is not an analysis altogether separate from whether the defendant has received a benefit. The word *benefit* "denotes any form of advantage." Restatement (First) of Restitution § 1 (1937). The word *enriched* merely indicates that the value of any such advantage must be measured by its usefulness relative to the defendant, rather than by the cost to the claimant. Thus, "[u]njust enrichment . . . allows an award of restitution for the value of the benefit unjustly received, rather than the value of the service provided." *Johnson*, 2010 S.D. 20, ¶ 15, 779 N.W.2d at 418 (distinguishing the measure of damages for unjust enrichment and quantum meruit). Therefore, in order for a claimant to meet its burden of proving it conferred a benefit upon the defendant, the claimant is required to prove it transferred something more advantageous than not, as measured relative to the defendant. In order to make such a showing, however, a claimant necessarily must offer proof that the thing transferred is advantageous to the defendant.

[¶22.]     Midland conferred a benefit on the Partnerships.  Midland seeks

$1,187,527, which reflects Clement's direct planting expenses, indirect expenses,

and interest reimbursed by Midland.  The circuit court found "numerous

discrepancies with the numbers relied on by both parties" and rejected Midland's

accounting of Clement's input costs as the measure of benefit received by the

Partnerships.  Instead, the court found that at most, any benefit actually

transferred to the Partnerships should be measured according to the estimate of

expenses the Partnerships would have incurred if they had retained possession of

the property and planted the winter wheat themselves.  According to the

Partnerships, they would have spent approximately $586,627 instead of $1,187,527.

Thus, even though Midland was unable to prove its asserted degree of the

Partnerships' enrichment, the Partnerships admit they would have spent an

additional $586,627 beyond what they would have otherwise expended in resources

in planting winter wheat on 12,269 acres.  Therefore, by their own admission,

Clement's planting spared the Partnerships the expense of $586,627; that the

Partnerships ultimately realized a net loss on the planted wheat does not frustrate

the conclusion that the Partnerships received a benefit.  As a result, Midland has

established the first element of its unjust enrichment claim.

[¶23.]     Next, Midland must show that the Partnerships were aware they

received a benefit.  *Hofeldt*, 2003 S.D. 25, ¶ 16, 658 N.W.2d at 788.  The circuit

court found that the Partnerships knew Clement was planting winter wheat.  The

court noted that the Partnerships informed both Clement and Midland that they

opposed Clement's planting.  Further, Dowling is an experienced farmer and was

well aware of the effort and expense associated with planting a crop. Although the Partnerships may contest the value of Clement's planting, it cannot be said that the Partnerships were unaware they were receiving some benefit from 12,269 acres of winter wheat that they did not plant. Therefore, Midland has established the second element of its unjust enrichment claim.

[¶24.]     Finally, Midland must show "that it is inequitable to allow [the Partnerships] to retain this benefit without paying for it." *Id.* The circuit court decided "it would be unjust and inequitable to grant relief to the party who breached the contract under the facts of this case." However, at this stage, "the relevant inquiry is whether the circumstances are such that equitably the beneficiary should restore to the benefactor the benefit or its value." *Id.* ¶ 18, 658 N.W.2d at 788. While the inequitable behavior of the claimant may ultimately preclude recovery, the initial question of whether or not a defendant has been unjustly enriched is necessarily focused on the nature of the transfer itself. An enrichment is unjust if it "lacks an adequate legal basis; [i.e.,] it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights. Broadly speaking, an ineffective transaction for these purposes is one that is *nonconsensual*." Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011). Thus, "[a]s a general rule[,] . . . a person who without mistake, coercion[,] or request has unconditionally conferred a benefit upon another is not entitled to restitution[.]" *Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569, 574 (S.D. 1991).

[¶25.]    The Partnerships are not liable in restitution to Midland for Midland's reimbursement to Clement of the benefit transferred from Clement to the Partnerships. Midland does not claim it was coerced into reimbursing Clement or that the Partnerships requested Midland pay Clement—in fact, the Partnerships made their opposition to Clement's planting unequivocally known. Nor can Midland's decision to reimburse Clement be described as an invalidating mistake of fact or law. An invalidating mistake does not occur where the claimant bears the risk of loss. *See* Restatement (Third) of Restitution & Unjust Enrichment § 5(2)(b) (2011). A claimant bears the risk of loss when it "has consciously assumed the risk by deciding to act in the face of a recognized uncertainty[.]" *Id.* § 5(3)(b). "The usual setting of such a transaction is the claimant's decision to satisfy a doubtful claim, in the face of a recognized uncertainty as to the underlying liability." *Id.* § 5 cmt. b(2). "The decision to act in such a case rests on a determination that the anticipated costs of resisting the claim outweigh the cost of settlement . . . ." *Id.*

[¶26.]    The Wisconsin Supreme Court's decision in *Meeme Mutual Home Protection Fire Insurance Co. v. Lorfeld*, 216 N.W. 507 (Wis. 1927), is an exemplar of assumption of the risk in the restitution context. In that case, "the action was to recover payment made to the assignee of the insured on a fire loss. After the payment, the insured confessed that he had set the fire." *Grand Trunk W. R.R. Co. v. Lahiff*, 261 N.W. 11, 13 (Wis. 1935). Investigations conducted by the claimant and the state fire marshal indicated the loss might have been deliberately caused by the insured. *Meeme Mut.*, 216 N.W. at 509. The court, invoking contract principles, said:

> Where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. These limitations are predicated upon common experience, that, if people contract under such circumstances, they usually intend to abide the resolution either way of the known uncertainty, and have insisted on and received consideration for taking that chance.

*Id.* at 508 (quoting *Kowalke v. Milwaukee Elec. Ry. & Light Co.*, 79 N.W. 762, 763 (Wis. 1899)). In denying relief, the Wisconsin Supreme Court concluded that "[t]he plaintiff was not unconscious or forgetful of the fact that the fire might be of incendiary origin, but, in spite of that knowledge and conscious of that fact, concluded to pay." *Meeme Mut.*, 216 N.W. at 509. Thus, the claimant's "payment under such circumstances was voluntary, was not made under a mistake of fact, and [could not] be recovered[.]" *Id.*

[¶27.]     The circumstances surrounding Midland's payment to Clement are strongly analogous to those in *Meeme Mutual*. Midland's decision to reimburse Clement, as well as Clement's decision to plant, was made while litigation regarding the right to possession of the land was pending. However confident Midland and Clement might have been that Midland would ultimately succeed in its contract dispute with the Partnerships, both Midland and Clement were cognizant of the very real possibility that the Partnerships might prevail. This conclusion is evidenced by Midland's promise to reimburse Clement if the circuit court decided adversely to Midland. This promise was not gratuitous—Midland agreed to reimburse Clement as a part of the lease negotiated between Midland and Clement in September 2012. Midland and Clement also entered into a purchase agreement less than one week later. The combined effect of the lease and purchase

agreements was that Clement was able to take possession and immediately begin planting crops—an original condition of Clement's agreement to purchase the land in the first place. Thus, Midland's promise to pay Clement rested on a determination that the anticipated profit accompanying the completed sale of the property outweighed the potential expense of reimbursing Clement's planting costs. "[A] party that acts on the basis of such a calculation may be said to have assumed the risk that the calculation, depending as it does on a comparison of unknowns, will be revealed to be wrong." Restatement (Third) of Restitution & Unjust Enrichment § 5 cmt. b(2) (2011).

[¶28.]    Despite the foregoing, Midland argues that "the circuit court should have considered that the denial of equitable relief places Dowling in a better position than if there had been no breach of contract." According to Midland, this view is not inconsistent with our decision in *Hofeldt*. On the contrary, "[t]he concern of restitution is not . . . with unjust enrichment in any such broad sense[.]" Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b. In *Hofeldt*, we quoted the circuit court's statement that the defendant, who received farming subsidies for land he purchased prior to the claimant–seller providing him a clear title, "only received what he would have received had [the claimant] acted diligently in the beginning. The only arguable unjust enrichment is the benefit of having [the claimant] pay the taxes over the years. In this instance, [the defendant] has tendered those taxes." 2003 S.D. 25, ¶ 18, 658 N.W.2d at 789. Thus, the quoted passage indicates only that the subsidies received by the defendant were not a benefit conferred by the claimant; the passage does not indicate that a defendant

being placed in a better position militates in favor of finding unjust enrichment. Enrichment does not subject a defendant to liability in restitution; *unjust* enrichment does.  *Id.* ¶ 15, 658 N.W.2d at 788.

[¶29.]     Midland also claims that our decision in *Satterlee* supports the conclusion that the Partnerships were unjustly enriched.  That case involved a foreclosure action in which the defendants agreed not to contest the foreclosure and to give the foreclosing plaintiff "the right to prepare the land and plant the 1989 crop during the redemption period." *Satterlee*, 475 N.W.2d at 572.  This provision was incorporated into the foreclosure judgment.  *Id.*  Pursuant to that judgment, the claimant planted crops on the defendant's land during the redemption period.  One of the defendants subsequently claimed ownership of the crop.  *Id.*  In determining which party was entitled to the proceeds of the crops, we said, "To allow Kirby to claim the crop after Aetna had planted and harvested would be unjust enrichment and contrary to the agreement between the parties." *Id.*

[¶30.]     Contrary to Midland's claims, our decision in *Satterlee* is fully in accord with our decision today.  Unlike the present case, the defendants in *Satterlee* would have been unjustly enriched because the transfer of the benefit was nonconsensual.  First, the claimant planted its crops with the permission of the defendants as embodied in the foreclosure judgment.  Second, the claimant—acting under the defendants' promise not to contest the foreclosure proceedings—planted its crops under the reasonable expectation that it would take full possession of the land prior to the time for harvest.  In contrast, Midland and Clement acted not with the Partnerships' permission or promise of noninterference, but rather planted despite

an active legal battle disputing essentially the very right to do the same. Thus, unlike the present case, nothing in *Satterlee* tends to establish that the claimant in that case was aware of any uncertainty surrounding the right to possession of the property or the crops, let alone that the claimant acted in disregard of that uncertainty. As far as that claimant could have reasonably foreseen, its expenditures in planting and harvesting the crops could have only possibly benefited itself. Therefore, the transfer was legally ineffective to alter ownership rights.[3]

[¶31.]        Although the Partnerships received a benefit, Midland's promise to reimburse Clement was an act in conscious disregard of the uncertain outcome of Midland's pending contract dispute with the Partnerships. Consequently, there is an adequate legal justification for the Partnerships' retention of that benefit such that the Partnerships have not been *unjustly* enriched. Therefore, Midland is not entitled to restitution, *see id.* at 574, and the circuit court did not abuse its discretion in denying equitable relief.

---

3.        Similarly, Midland also cites *Kistler v. Stoddard*, 688 S.W.2d 746 (Ark. Ct. App. 1985). In that case, a farmer leased and farmed the same land for over twenty years until the owner sold the land to a third party. *Id.* at 746-47. For the years immediately prior to that sale, the farmer planted winter wheat even though the leases ran according to the calendar year. *Id.* at 747. The new buyer took possession of the land at the beginning of 1982—with knowledge that the farmer had planted winter wheat—and claimed possession of it. *Id.* The court held that while the defendant owned the wheat crop, the defendant had no "justification" for keeping "the amount expended to plant the crop." *Id.* Like *Satterlee*, but in contrast to the present case, the defendant's retention of the benefit conferred was inequitable because it lacked an adequate legal justification.

#27114

[¶32.]        *3.      Whether the doctrine of unclean hands prevents Midland from seeking restitution for unjust enrichment.*

[¶33.]      Because we hold that Midland failed to establish the Partnerships were unjustly enriched, we need not decide whether Midland is barred from seeking restitution by the doctrine of unclean hands. Therefore, we do not decide this issue.

### Conclusion

[¶34.]      The 2012 crop year lease created a right of first refusal held by the Partnerships regarding the 2013, 2014, and 2015 crop years. This right ripened into an option when Midland received an offer from Clement and relayed the new price to the Partnerships. Because a fact-finder could find that the Partnerships accepted the new price term and exercised the option, there was a genuine dispute for trial. Consequently, the circuit court did not err in denying Midland's motion for summary judgment. Furthermore, Midland conferred a benefit on the Partnerships despite Midland's involvement in pending litigation regarding the validity of the lease. But Midland's decision to preserve the possibility of its purchase agreement with Clement was the result of conscious calculation, not mistake, coercion, or request. Thus, Midland has failed to establish that the Partnerships were *unjustly* enriched and, therefore, Midland is not entitled to equitable relief. We affirm.

[¶35.]      GILBERTSON, Chief Justice, and ZINTER, Justice, and SPEARS and CUTLER, Circuit Court Judges, concur.

[¶36.]      SPEARS, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

[¶37.]      CUTLER, Circuit Court Judge, sitting for KERN, Justice, disqualified.