#27794-r-JMK
**2017 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE STANDARD FIRE INSURANCE
COMPANY, A SUBSIDIARY OF
TRAVELERS INSURANCE,                    Plaintiff and Appellant,

   v.

CONTINENTAL RESOURCES, INC.,            Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

THOMAS J. VON WALD of
Boyce Law Firm, LLP
Sioux Falls, South Dakota

                              Attorneys for plaintiff
                              and appellant.


MICHAEL F. SHAW of
May, Adam, Gerdes & Thompson LLP
Pierre, South Dakota            Attorneys for defendant
                              and appellee.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 7, 2016
OPINION FILED 06/28/17

#27794

KERN, Justice

[¶1.] Standard Fire Insurance Co. appeals from a circuit court order dismissing its case against Continental Resources Inc. Standard Fire sued Continental Resources for reimbursement or in the alternative subrogation of workers' compensation benefits paid to an employee between 2009 and 2013. The circuit court dismissed the case pursuant to SDCL 15-6-12(b)(5), finding that the terms of a settlement agreement barred further litigation and that res judicata applied. We reverse and remand.

## Facts and Procedural History

[¶2.] Dale Denzin sustained a work-related injury while employed at one of Koch Industries' oilfields. The accident occurred on March 23, 1983, and crushed Denzin's pelvis. Standard Fire, a subsidiary of Travelers Insurance, provided Koch Industries workers' compensation insurance and paid Denzin temporary total disability and permanent partial disability (PPD) benefits. Denzin resumed work in January 1984. In 1995, Continental Resources acquired Koch Industries' interest in the oilfield and became Denzin's employer. Denzin underwent hip-replacement surgeries in 2009 and 2010. Standard Fire agreed to pay for the operations. Following the surgeries, Denzin received a permanent partial impairment rating of 50% in both the lower-right and lower-left extremities.

[¶3.] In May 2012, Denzin filed a workers' compensation petition against Continental Resources with the Department of Labor and Regulation. Denzin sought PPD benefits related to his hip-replacement surgeries. Under SDCL 62-4-6, Denzin qualified for the maximum weekly benefit of $620 per week and was entitled

to 160 weeks of compensation, totaling $99,200 in permanent partial impairment payments.

[¶4.]    On June 22, 2012, Continental Resources filed a third-party petition against Koch Industries and Standard Fire. Continental Resources claimed that Koch Industries—as Denzin's employer at the time of the accident—was responsible for any benefits that were then due and owing. Standard Fire answered and denied any obligation to pay Denzin additional workers' compensation benefits, claiming that Continental Resources was responsible for payment of any such benefits.

[¶5.]    In December 2013, Denzin, Standard Fire, and Continental Resources entered into a settlement agreement. The agreement, entitled "Settlement Agreement and Dismissal of Petition for Hearing," reprised the foregoing facts and stipulated that Continental Resources would accept Denzin's claim, pay a lump sum of $99,200, and dismiss its third-party action against Koch Industries and Standard Fire. The agreement further provided that "the parties agree to settle this matter without further litigation[.]" The Department of Labor and Regulation approved the agreement, dismissed Continental Resources' claim against Koch Industries and Denzin's workers' compensation petition for hearing, and ordered Continental Resources to pay Denzin within ten days.

[¶6.]    On November 10, 2014, Standard Fire commenced a civil action against Continental Resources seeking reimbursement or subrogation for workers' compensation benefits paid to Denzin between 2009 and 2013. Standard Fire claimed that it paid $82,276.26 in medical bills on Denzin's behalf and $4,676.20 in indemnity benefits directly to Denzin. Standard Fire sought reimbursement

pursuant to SDCL 62-7-38 for these amounts, which totaled $86,952.46. Standard Fire alleged that Continental Resources stipulated in the settlement agreement that Denzin's work duties after Continental Resources' acquisition of the oilfield in 1995 contributed independently to Denzin's need for medical treatment in 2009 and beyond. Standard Fire also asserted an alternative claim for equitable subrogation. Continental Resources answered, denying these claims and asserting various affirmative defenses. Continental Resources filed a motion to dismiss pursuant to SDCL 15-6-12(b)(5) on October 9, 2014, arguing that res judicata barred Standard Fire's claims and that any equitable claims were "barred by the Settlement Agreement of the parties, Plaintiff's available remedies at law, and Plaintiff's voluntary payment of workers' compensation benefits to Dale Denzin."

[¶7.] On January 19, 2016, the circuit court set the matter for hearing. Because Continental Resources moved to dismiss under SDCL 15-6-12(b)(5), the parties asked the court to consider the complaint and attached pleadings and documents from the administrative proceeding. The parties did not ask the circuit court to take judicial notice of the administrative record and agreed that there were no material facts in dispute.

[¶8.] After oral argument, the circuit court observed that both the identity of the parties and the issues of "who's on the risk, [and] who's got to pay for the hips" were identical to those resolved in the settlement agreement. The court noted that the agreement stated that "the parties agree to settle this matter without further litigation," and deemed this language a "shotgun clause." The court refused "to surgically interpret . . . 'this matter' . . . as dissecting out disability from medicals,"

which the court viewed as calling for "a mighty fine scalpel." The court then orally granted Continental Resources' motion to dismiss. It concluded that the language of the settlement agreement resolved all the issues concerning workers' compensation benefits related to Denzin's hip surgeries, including the benefits previously paid and the most-recently-requested impairment benefits. In its written order, the court found that Standard Fire's "case involves identical parties [and] identical issues"; that the Department of Labor entered a final judgment on the merits; that "both parties had a full and fair opportunity to litigate the issues involved in this matter"; and that "the parties entered into a Stipulation settling the matter without reimbursement to [Standard Fire] for any reason and agreed to a settlement 'without further litigation.'" The court concluded that "the parties' settlement agreement and [dismissal of the workers' compensation case] was a valid contract that fully resolved the workers' compensation issues between" Denzin, Standard Fire, and Continental Resources, and "which preclude[d] further litigation between" Standard Fire and Continental Resources "regarding this matter."

[¶9.]     Standard Fire appeals, raising the following issue for our review:

> Whether the circuit court erred when it determined that the workers' compensation settlement agreement fully resolved all claims between Standard Fire and Continental Resources.

### Decision

[¶10.]     We review de novo whether the circuit court properly dismissed Standard Fire's complaint under SDCL 15-6-12(b)(5). *Total Auctions & Real Estate, LLC v. S.D. Dep't of Revenue & Regulation*, 2016 S.D. 95, ¶ 8, 888 N.W.2d 577, 580. "A complaint need only contain a short plain statement of the claim showing the pleader is entitled to relief and a demand for judgment for the relief to which the

pleader deems himself entitled." *Nooney v. StubHub, Inc.*, 2015 S.D. 102, ¶ 9, 873 N.W.2d 497, 499. Here, the court considered the pleadings, the attachments to the pleadings, and documents incorporated by reference in the pleadings. *See id.* ¶ 8 (explaining that a court may consider documents incorporated by reference in the complaint). We consider the same.

[¶11.] In its complaint, Standard Fire asserted claims for statutory reimbursement or equitable subrogation. In particular, Standard Fire alleged that it paid Denzin $86,952.46 in medical and indemnity benefits between 2009 and 2013. Standard Fire cited to the parties' settlement agreement and claimed that Continental Resources stipulated that "Denzin's work duties after 1995 contributed independently to his need for medical treatment in 2009 and beyond and that payment for such treatment (and subsequent impairment rating) is Continental's responsibility instead of Standard Fire's (via Travelers Insurance) responsibility." In its answer, Continental Resources did not dispute that it entered into a settlement agreement with Standard Fire. It, however, alleged in its motion to dismiss that the settlement agreement barred Standard Fire's right to recover under any theory advanced by Standard Fire.

[¶12.] Before the circuit court and on appeal, the parties contend that the settlement agreement is unambiguous. The agreement reads in part:

> 8. That based upon Claimant's earnings at the time of his hip replacements in 2009, he qualified for the maximum weekly benefit under South Dakota law which was $620.00 per week and he would thereby be entitled to a total permanent partial impairment payment of Ninety Nine Thousand Two Hundred Dollars and no cents ($99,200.00).
>
> 9. That this case has been in litigation where there has been a genuine dispute existing as between Continental Resources

and Koch Industries as to the responsibility for payment of this impairment benefit.

10.    That the parties agree that based upon the applicable medical testimony and opinions Claimant's work duties after 1995 contributed independently to his need for the hip replacements and thus the permanent partial impairments as spelled out above.

11.    That the parties agree to settle this matter without further litigation as follows:

>    A.    Continental Resources will agree to accept Claimant's claim and pay a lump sum payment to him and his counsel of Ninety Nine Thousand Two Hundred Dollars and no cents ($99,200.00).

>    B.    Continental Resources will dismiss its Third Party action against Koch Industries upon approval of this settlement agreement by the South Dakota Department of Labor and Regulation.

>    C.    Claimant agrees to dismiss the current Petition for Hearing and to waive any claim for interest or penalties in exchange for payment of the impairment benefits in a lump sum, all of which will take place within ten (10) days after approval of this agreement by the South Dakota Department of Labor and Regulation.

The parties dispute whether "this matter" should be read broadly, so as to resolve all workers' compensation benefit matters related to Denzin's hip surgeries, or narrowly, such that it refers only to the PPD payments referenced in the foregoing paragraphs.  Because we find that the settlement agreement "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement," *Dowling Family P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 13, 865 N.W.2d 854, 860), we reverse and remand.

[¶13.]    Settlement agreements are subject to the same rules of construction as contracts.  *In re Estate of Neiswender*, 2003 S.D. 50, ¶ 15, 660 N.W.2d 249, 252.

"Thus, whether a settlement agreement is ambiguous is a question of law." *Lewis v. Benjamin Moore & Co.*, 1998 S.D. 14, ¶ 9, 574 N.W.2d 887, 889. We may not "go beyond the four corners of the contract" unless we first determine that the settlement agreement is ambiguous. *Dowling Family P'ship*, 2015 S.D. 50, ¶ 14, 865 N.W.2d at 861. Even so, ambiguity does not arise merely because different interpretations of the contract are offered. *Roden v. Gen. Cas. Co. of Wis.*, 2003 S.D. 130, ¶ 10, 671 N.W.2d 622, 625. Rather, "[a] contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235. Here, two reasonable, competing interpretations of the settlement agreement exist.

[¶14.]     In Standard Fire's view, the terms of the settlement agreement did not bar its claim for reimbursement or subrogation. Standard Fire argues that paragraph 9 of the settlement agreement narrows the subject of "this matter" by providing that "there has been a genuine dispute existing . . . as to the responsibility for payment of *this impairment* benefit." (Emphasis added.) Standard Fire contends that "this impairment benefit" is limited to the PPD payment of $99,200 referenced in paragraph 8 of the settlement agreement. Standard Fire thus concludes that the medical and indemnity benefits it now seeks are outside the scope of the foregoing paragraphs.

[¶15.]     While the circuit court described the task of "dissecting out disability from medicals" as unwieldly and requiring "a mighty fine scalpel," this distinction is well established in workers' compensation law. Impairment benefits and medical

benefits are separate scheduled benefits governed by different statutes. PPD benefits are provided under SDCL 62-4-6, whereas medical benefits are governed by SDCL 62-4-1. *Compare Streeter v. Canton Sch. Dist.*, 2004 S.D. 30, ¶ 25, 677 N.W.2d 221, 226 (applying SDCL 62-4-1 to payment of medical expenses), *with Cozine v. Midwest Coast Transp., Inc.*, 454 N.W.2d 548, 551 (S.D. 1990) ("SDCL 62-4-6 specifies the amount of compensation an employee shall receive for the loss of a part of the body or its loss of use."). Further, the settlement agreement lacks the kind of language typical in an agreement providing a broad release from future claims. *See, e.g., Gores v. Miller*, 2016 S.D. 9, ¶ 10, 875 N.W.2d 34, 37 (involving settlement agreement that released party from "all 'additional claims' of 'any kind or nature whatsoever' against 'all other persons' for 'all injuries' that had or might 'result from,' 'develop' from, or 'arise out of' [an] accident"). Also notably absent is any language dismissing the matter with prejudice.

[¶16.] Nevertheless, Continental Resources provides a competing view, interpreting "this matter" broadly to encompass medical and indemnity benefits. According to Continental Resources, paragraph 9 does not define "this matter." In Continental Resources' view, paragraph 9 refers to but one component of a larger dispute between Denzin, Standard Fire, and Continental Resources. Continental Resources highlights the language used in paragraph 9, "*[t]hat this case has been in litigation where there has been* a genuine dispute existing as between Continental Resources and Koch Industries as to the responsibility for payment of this impairment benefit." (Emphasis added.) The settlement agreement could be interpreted as resolving "this case." The language "where there has been" could be

read to mean that "this case" involved a disagreement over responsibility for Denzin's PPD payments. However, it does not necessarily limit the scope of "this case" and in turn, "this matter" exclusively to the contents of that particular dispute.

[¶17.]     As "this matter" could be read broadly or narrowly, the circuit court erred when it determined that the plain language of the settlement agreement barred Standard Fire's claim. We reverse and remand for further proceedings.

[¶18.]     GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶19.]     WILBUR, Retired Justice, and SEVERSON, Justice, dissent.


WILBUR, Retired Justice (dissenting).

[¶20.]     The resolution of this case should not turn on the interpretation of only one phrase within the agreement: "whether '*this matter*' should be read broadly, so as to resolve all workers' compensation benefit matters related to Denzin's hip surgeries, or narrowly, such that it refers only to the PPD payments referenced in the foregoing paragraphs." *Supra* majority opinion ¶ 12 (emphasis added). Such view is problematic because the phrase "this matter" is one clause within an entire settlement agreement. The question we must decide is whether the *settlement agreement* precludes Standard Fire's current suit against Continental Resources.

[¶21.]     It is well established that we review contracts as a whole and "'give effect to the language of the entire contract,' and 'particular words and phrases are not interpreted in isolation.'" *Jones v. Siouxland Surgery Ctr. Ltd. P'ship*, 2006 S.D. 97, ¶ 15, 724 N.W.2d 340, 345 (quoting *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794,

797-98 (Iowa 1999)). Here, "this matter" must be viewed with reference to the contract language that Continental Resources agreed to dismiss its "Third Party action against Koch Industries [(Standard Fire)]." If that reference is ignored, then that would mean the parties intended the settlement agreement to bind only Denzin and Continental Resources. But the settlement agreement specifically provides that "*the parties* agree to settle this matter[.]" (Emphasis added.) Standard Fire is a party and under the terms of the settlement agreement, Standard Fire agreed to no further litigation on Continental Resources' third-party claim disputing responsibility to pay Denzin's workers' compensation benefits related to the hip surgeries.

[¶22.]     We often say that an ambiguity does not arise merely because the parties offer different interpretations of the contract. *See, e.g., Roden*, 2003 S.D. 130, ¶ 10, 671 N.W.2d at 625. Instead, "[a] contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Alverson*, 1997 S.D. 9, ¶ 8, 559 N.W.2d at 235. Because, here, the settlement agreement unambiguously resolved all workers' compensation benefit matters related to Denzin's hip surgeries, which includes Standard Fire's right to seek reimbursement from Continental Resources for benefits paid between 2009 and 2013, I dissent.

[¶23.]     SEVERSON, Justice, joins this dissent.